Joseph GOLDEN, Angelo Deitos, Edward Jones, Ida Thomason, Luther Palmer, Caroline Forys, Josephine Thomas, John Hoyle, Arthur Sallis, Thelma Songer, John W. Galloway, and Roger Farrar, Plaintiffs,

v.

**KELSEY–HAYES COMPANY,**
Defendant.

Civ. A. No. 93–74824.

United States District Court,
E.D. Michigan, S.D.

March 14, 1994.

Mark T. Nelson, Butzel Long, Detroit, MI, for Kelsey–Hayes Co.

Roger J. McClow, Klimist, McKnight, Southfield, MI, for Roger Farrar.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

GADOLA, District Judge.

This matter is before the court on plaintiffs' motion for a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. Plaintiffs represent a proposed class of individuals seeking relief under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, from defendant Kelsey–Hayes Company for breach of a collective bargaining agreement and a welfare benefit plan. The court held a hearing on plaintiffs' motion on March 10, 1994. For the reasons discussed below, the court will grant plaintiffs' motion.

### I. Facts

Plaintiffs are retired employees of defendant or their surviving spouses. They claim that defendant breached its promise to provide lifetime retiree health benefits at no cost. Defendant has provided health care benefits for plaintiffs pursuant to successive collective bargaining agreements with the United Auto Workers ("UAW"). This action involves plaintiffs from four separate bargaining units, each with its own set of successive contracts: (1) defendant's Detroit, Michigan and Romulus, Michigan units; (2) defendant's former Heintz Division in Philadelphia, Pennsylvania; (3) defendant's former SPECO Division in Springfield, Ohio; (4) defendant's former Gunite Division in Rockford, Illinois. Each of the collective bargaining agreements at issue contain similar insurance agreements that provide health care coverage for retirees and surviving spouses at specific negotiated levels.

In July 1987, defendant sold its Heintz, Gunite, and SPECO Divisions. As part of the purchase agreement, defendant agreed to assume the obligation of providing health insurance benefits for those employees who had retired before the closing date of the sale of the divisions. Following the sale, defendant has continued to provide health care coverage for its retirees from its three former divisions for the past six years at no cost.

In April 1993, defendant notified plaintiffs that starting January 1, 1994, it would modify retiree and surviving spouse health care benefits so as to require the payment of premiums and deductibles. Defendant would thereafter require payment of a monthly premium, an out-of-pocket deductible of $300 per person and $600 per family, and a twenty percent co-pay until an annual out-of-pocket maximum of $2,000 for an individual and $4,000 per family is reached. On December 23, 1993, plaintiffs filed the instant motion for a preliminary injunction that restrains defendant from implementing the modifications to their health benefits.

Since plaintiffs filed their motion, the parties have reached an agreement on the provision of health benefits for retirees from defendant's Detroit and Romulus units during the pendency of this litigation. As a result, plaintiffs are now only seeking injunctive relief for retirees and surviving spouses from defendant's former Heintz, Gunite, and SPECO Divisions.

Plaintiffs contend that the collective bargaining agreements in force at the time of the sale of defendant's three divisions guaranteed the payment of specified health benefits for the lifetime of covered retirees and surviving spouses. Defendant contends that the collective bargaining agreements contain durational provisions that terminated all health care benefits for retirees upon expiration of the bargaining agreement.

## II. Standard of Review for Preliminary Injunctions

■ Plaintiffs are seeking a preliminary injunction that requires defendant to reinstate the benefits that it provided prior to implementing the modifications. The decision of whether or not to issue a preliminary injunction lies within the discretion of the district court. *CSX Transp., Inc. v. Tennessee State Bd. of Equalization,* 964 F.2d 548, 552 (6th Cir.1992). When determining whether to issue a preliminary injunction, a district court should address four factors:

i. the plaintiff's likelihood of success on the merits of the action;

ii. the irreparable harm to plaintiff that could result if the court does not issue the injunction;

iii. whether the interests of the public will be served; and

iv. the possibility that the injunction would cause substantial harm to others.

*Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 262 (6th Cir.1987); *In re DeLorean Motor Co.,* 755 F.2d 1223 (6th Cir.1985); *Mason Cty. Medical Ass'n v. Knebel,* 563 F.2d 256 (6th Cir.1977).

## III. Analysis

### A. Likelihood of Success on the Merits

■ The principal issue is whether plaintiffs have a vested right to receive lifetime health care benefits from defendant without cost, and whether defendant has a contractual right to modify and reduce the health care benefits provided for in collectively bargained agreements. Plaintiffs allege that defendant has reduced their health insurance benefits in violation of the LMRA and ERISA. If the health insurance benefits vest for the lifetime of the retirees, then defendant could not unilaterally modify or reduce those benefits.

■ In *UAW v. Yard–Man, Inc.,* 716 F.2d 1476 (6th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984) the Sixth Circuit addressed the question of whether retirees' health insurance benefits terminate at the expiration of the current collective bargaining agreement or whether they continue for the lifetime of the retiree. The court stated that resolution of this question depends on the intent of the parties to the collective bargaining agreement. *Id.* at 1479. First, a court must look to the express provisions of the agreement construing each section "consistently with

the entire document and the relative positions and purposes of the parties." *Id.* at 1479–80. Where the express language of a retiree benefit plan is ambiguous as to the duration of retiree health insurance, courts should look to other provisions of the agreement. *Id.* at 1482. In determining the duration of retiree health benefits, the court noted that

> examination of the context in which these benefits arose demonstrates the likelihood that continuing insurance benefits for retirees were intended. Benefits for retirees are only permissive not mandatory subjects of collective bargaining. As such, it is unlikely that such benefits, which are typically understood as a form of delayed compensation or reward for past services, would be left to the contingencies of future negotiations.

*Id.* (citations omitted). The Sixth Circuit recognized that employees are aware when they accept retiree benefits in exchange for lower wages, that they cannot rely on their union to maintain those benefits once they have retired and left their bargaining unit. Thus, "finding an intent to create interminable rights to retiree insurance benefits in the absence of explicit language, is not, in any discernible way, inconsistent with federal labor law." *Id.*

The most important holding of the *Yard–Man* decision is a recognition of an inference of interminable benefits absent express language to the contrary. In this context, the Sixth Circuit stated that

> retiree benefits are in a sense "status" benefits which, as such, carry with them an inference that they continue so long as the prerequisite status is maintained. Thus, when the parties contract for benefits which accrue upon achievement of retiree status, there is an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree. This is not to say that retiree insurance benefits are necessarily interminable by their nature. Nor does any federal labor policy identified to this Court presumptively favor the finding of interminable rights to retiree insurance benefits when the collective bargaining agreement

is silent. Rather, as part of the context from which the collective bargaining agreement arose, the nature of such benefits simply provides another inference of intent. Standing alone, this factor would be insufficient to find an intent to create interminable benefits.

*Id.* at 1482 (citation omitted). The decision in *Yard–Man* has been consistently followed in more recent cases in the Sixth Circuit. *See, e.g., Smith v. ABS Indus., Inc.*, 890 F.2d 841 (6th Cir.1989) (retiree benefits were vested); *Policy v. Powell Pressed Steel Co.*, 770 F.2d 609 (6th Cir.1985) (duty to provide retiree health benefits did not end with expiration of collective bargaining agreement), *cert. denied*, 475 U.S. 1017, 106 S.Ct. 1202, 89 L.Ed.2d 315 (1986); *Weimer v. Kurz–Kasch, Inc.*, 773 F.2d 669 (6th Cir.1985); *UAW v. Cadillac Malleable Iron Co.*, 728 F.2d 807 (6th Cir.1984). Thus, any determination of the duration of retiree health benefits must be made in the context of *Yard–Man* and its progeny.

In support of their claim for lifetime retiree health benefits, plaintiffs rely upon the express provisions of the collective bargaining agreements, portions of summary plan descriptions issued by defendant to its employees that explained the retiree benefits that it was providing to them, and the conduct of defendant since it sold the SPECO, Gunite, and Heintz Divisions.

Plaintiffs claim that the language of the collective bargaining agreements themselves indicates that their health benefits were intended to vest for their lifetimes. Provisions of the SPECO, Gunite, and Heintz agreements directly tie retiree eligibility for health care coverage to eligibility for pension benefits. Surviving spouse eligibility is also tied to eligibility for survivor income benefits. For example, the SPECO agreement expressly states that surviving spouse health benefits last for as long as monthly survivor insurance benefits are provided. Plaintiffs contend that since pension and survivor income benefits are provided for life, then health care benefits, which complement and are tied directly to the pension agreement, were also intended to last for the lifetime of the retirees. In addition, there are no provi-

sions of the three collective bargaining agreements that allow for modification or amendment of the retiree health care plans.

Plaintiffs also present portions of Summary Plan Descriptions ("SPD") that defendant provided for its employees in order to explain the benefits that they were guaranteed. In a 1977 SPD issued by defendant to employees of its Heintz Division, defendant explained the retiree health benefits. The Heintz SPD stated with regard to retiree benefits that "[w]hen you are retired, your life insurance and all of your health care coverages, except for vision, are continued without cost to you." In addition, the SPD states that those employees who leave the company at age sixty-five without enough years of service to qualify for retirement, but enough to qualify for special status, are guaranteed that "all of your health care coverages except vision care will be continued for the rest of your life without cost to you." The SPD also contains language excepting retirees from durational provisions for various insurance benefits.

In a 1983 SPD for the Gunite Division insurance plan, defendant stated that "all of your Health Care Coverages will be continued for the rest of your life without cost to you. Kelsey–Hayes also pays the full cost of Health Care Coverages for surviving spouses and eligible children of deceased pensioners and of employees who die after they are eligible to retire voluntarily under the Kelsey–Hayes Pension Plan." During oral argument, counsel also represented that an SPD for the SPECO Division also contained similar language.

■ Evidence from an SPD is especially compelling because the Sixth Circuit has decided that "statements in a summary plan are binding and if the statements conflict with those in the plan itself, the summary shall govern." *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir. 1988). Thus, even if the promises made by defendant in the SPDs are contrary to the language of the collective bargaining agreements, defendant is bound by the provisions of the SPD.

Plaintiffs also point to defendant's conduct to demonstrate that the parties to the collective bargaining agreements intended that retirees receive lifetime health benefits. In support of the performance of its obligations regarding retiree welfare benefits, and as part of its sale of its Heintz and SPECO Divisions, defendant agreed to provide an irrevocable letter of credit in the amount of $20 million which would be in effect through the year 2002. The letter of credit indicates that defendant intended to provide health insurance benefits well in to the future. In addition, since the sale of its three divisions, defendant has continued for six years to provide the full cost of health care benefits to its retirees and surviving spouses.

■ Defendant claims that durational clauses contained in each of the collective bargaining agreements allow for the termination of retiree health benefits following expiration of the collective bargaining agreement. However, the Sixth Circuit has found that such routine durational clauses do not outweigh the implication that retiree health benefits were intended to outlast the life of a particular bargaining agreement. *Yard–Man*, 716 F.2d at 1482–83. In *Schalk v. Teledyne, Inc.*, 751 F.Supp. 1261 (W.D.Mich. 1990), *aff'd*, 948 F.2d 1290 (6th Cir.1991), the court was presented with similar general durational provisions. It noted that

> the existence of a general durational clause which provide[s] that the collective bargaining agreement should remain in effect until a certain date d[oes] not demonstrate an intent that all benefits described in the agreement also terminate[ ] on that date.

*Id.* at 1265 (citing *Yard–Man*, 716 F.2d at 1482–83). Thus, even with a general durational provision, such provisions only refer to the length of the agreement and not the period of time contemplated for retiree benefits. Other courts have reached similar conclusions concerning the application of general durational clauses in collective bargaining agreements. *See, e.g., Weimer v. Kurz–Kasch, Inc.*, 773 F.2d 669, 676 (6th Cir.1985); *United Paper Workers v. Muskegon Paper Box Co.*, 704 F.Supp. 774, 777–78 (W.D.Mich. 1988).

Defendant contends, however, that the durational provisions that it cites are not gener-

al clauses, but are instead specific provisions limiting the length of retiree benefits. The court finds, however, that the provisions cited by defendant are merely general durational clauses that refer to the expiration of the collective bargaining agreement. Defendant cites provisions that merely incorporate supplemental agreements concerning pension plans, unemployment benefit plans, and health insurance programs into the collective bargaining agreement itself. Because such incorporated supplemental agreements would terminate on the date when the collective bargaining agreement terminated says nothing about the duration of particular benefits, especially benefits for retirees.[1] Defendant does not cite to any provision that specifically limits the duration of any particular benefits. This was also the key element that was missing from the durational clause addressed by the Sixth Circuit in *Yard–Man*. *Yard–Man*, 716 F.2d at 1482.

Defendant has also presented some affidavits from Kelsey–Hayes officials who claim that the company never intended to provide lifetime retiree health benefits. However, plaintiffs have also presented an affidavit from another company official who participated in collective bargaining negotiations indicating that unionized employees were told that they would receive lifetime retiree health benefits.

The court finds that plaintiffs have demonstrated a strong likelihood of success on the merits of their claim for lifetime retiree health care benefits. There are no express provisions of the collective bargaining agreements that limit the duration of retiree health benefits. In fact, each of the collective bargaining agreements provides that eligibility for retiree health benefits is tied to eligibility for lifetime pension benefits or survivor spouse income. The summary plan descriptions indicate that retiree benefits were intended to last for the life of the retiree, without cost, regardless of the termination of the collective bargaining agreement. Defendant's conduct also indicates that plaintiffs' benefits were vested. After defendant sold its three divisions it continued

for six years to pay the full cost of retiree health benefits. Combined, all of these facts indicate that plaintiffs' retiree health benefits were intended to last for their lifetimes without modification. This evidence of intent supports the inference established in *Yard–Man*, that retiree health benefits are interminable.

**B. Irreparable Harm to Plaintiffs**

If a preliminary injunction is not entered, plaintiffs allege that they will suffer irreparable harm because they will be forced to choose between paying for needed medical procedures and paying for basic necessities. Plaintiffs are retirees or surviving spouses of retirees who allegedly do not have the financial resources to begin paying premiums and deductibles on their health care. Plaintiffs contend that they may be forced to forego needed medical care because they would have to absorb part of the cost of the care under defendant's modified benefits plan. In support of their allegations, plaintiffs have submitted numerous affidavits from individual retirees detailing the impact of the modifications of the benefits plan to their finances.

Defendant claims that plaintiffs have not established irreparable injury for all three of its former divisions. Plaintiffs have not presented affidavits from retirees from the Heintz or Gunite Divisions concerning the injury that they would suffer. In addition, defendant claims that plaintiffs have failed to show that money damages would not fully compensate them.

The court finds, however, that plaintiffs have established that they would suffer irreparable injury absent injunctive relief. Numerous courts have found that reductions in retiree insurance coverage constitute irreparable harm, meriting a preliminary injunction. *United Steelworkers of America v. Textron, Inc.*, 836 F.2d 6 (1st Cir.1987) (retirees as a group have less resources and are more vulnerable to emotional distress due to the imposition of additional insurance costs); *Schalk v. Teledyne, Inc.*, 751 F.Supp. 1261 (W.D.Mich.1990) (because retirees live on fixed incomes, small increases in expenses

---

1. Given defendant's logic, because its pension plan was incorporated into the collective bargaining agreement, its obligation to provide pensions ended with the expiration of the agreement.

create extreme financial hardship; they are more likely to suffer uncertainty and worry over the new costs associated with the modified plan), *aff'd*, 948 F.2d 1290 (6th Cir.1991); *Mamula v. Satralloy, Inc.*, 578 F.Supp. 563 (S.D.Ohio 1983). The court finds that the evidence presented by plaintiffs demonstrates that similar harm would befall retirees from the SPECO, Gunite, and Heintz Divisions were the modifications to plaintiffs' health benefits continued.

## C. Harm to Others

If a preliminary injunction is entered restraining defendant from modifying its retiree health care benefits, defendant will be forced to continue paying the full cost of health insurance for its retirees. For the past six years, defendant has paid this cost. Thus, if a preliminary injunction is entered, defendant will suffer a financial loss during the pendency of this litigation that it may recoup if it is ultimately successful on the merits. Defendant claims that it will cost an additional $160,000 per month, over the cost of the modified plan, to maintain full benefits for plaintiffs. However, defendant has made no showing that requiring it to reinstate the old retiree benefit plan would cause it severe financial hardship. The fact that defendant has paid the full cost of plaintiffs' health insurance for the past six years also indicates that a continuation of that situation would not cause economic dislocation.

The court finds that the harm to defendant of reinstating its former retiree health benefits would not outweigh the harm suffered by plaintiffs. Several other courts have found similarly that the harm caused an employer that is required to maintain health benefits because of a preliminary injunction is outweighed by the harm caused to retirees forced to go without medical care or forced to choose between basic necessities in order to pay premiums and deductibles. *Schalk*, 751 F.Supp. at 1268; *Shultz v. Teledyne, Inc.*, 657 F.Supp. 289, 293 (W.D.Pa.1987). Defendant has paid the full cost of health benefits since 1987, an injunction requiring them to continue to make those payments until this litigation is resolved does not outweigh the harm caused to plaintiffs.

## D. Interests of the Public

Plaintiffs allege that the public interest favors a preliminary injunction. Plaintiffs claim that ERISA and the LMRA strongly favor the protection of the rights of employees guaranteed by welfare benefit plans that are part of collective bargaining agreements. ERISA provides that the policy behind it is to "protect the interests of participants in employee benefit plans ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, ... by providing for appropriate remedies, sanctions, and ready access to the Federal Court." 29 U.S.C. § 1001(b). In addition, the LMRA favors enforcement of collective bargaining agreements so as to protect the contractual rights of employees and employers. In *Schalk*, the court indicated that the "public interest lies in protecting the legitimate expectations of retirees that their health insurance will be provided for the rest of their lives." *Schalk*, 751 F.Supp. at 1268.

Defendant claims that the public interest lies in allowing companies to distribute the burden of greater health care costs to the beneficiaries of the coverage. Without such burden shifting, companies that create jobs and enrich communities would be hurt.

In the circumstances of this case, however, the court finds that the public interest favors issuance of a preliminary injunction.

## E. Security Bond

Pursuant to Rule 65(c), no "preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered" by defendant. Fed. R.Civ.P. 65(c). A district court must expressly consider the question of requiring a bond before issuing a preliminary injunction. *Roth v. Bank of the Commonwealth*, 583 F.2d 527 (6th Cir.1978). The amount of security required and whether a bond is needed is up to the discretion of the district court.

Defendant estimates that if it is required to reinstate its old health benefits, it will cost the company approximately $160,000 a month. As a result, defendant has request-

ed a bond of $1 million. In *Schalk,* based on defendant's claim that it would cost an additional $90,000 per month to maintain its old health plan, the district court required plaintiffs to post a $50,000 bond to support a preliminary injunction containing similar modifications of a retiree health plan. *Schalk,* 751 F.Supp. at 1269. Under the circumstances of this case, the court finds that a bond of $1 million would be excessive. However, given the burden placed on defendant, the court will require plaintiffs to post a bond of $100,000 before it will issue a preliminary injunction.

### IV. Conclusion

The court will grant plaintiffs' motion for a preliminary injunction ordering defendant to reinstate the health benefits to retirees and surviving spouses as provided for under the terms of the collective bargaining agreements in force at the time that defendant sold the SPECO, Gunite, and Heintz Divisions. Plaintiffs have demonstrated that they will likely prevail on the merits and that they will suffer irreparable harm absent an injunction. In addition, the harm suffered by defendant as a result of an injunction would be outweighed by the harm suffered by plaintiffs without such relief.

### *ORDER*

**THEREFORE, IT IS HEREBY ORDERED** that plaintiffs' motion for a preliminary injunction is **GRANTED.**

**IT IS FURTHER ORDERED** that upon the posting of a $100,000 security bond by plaintiffs, defendant Kelsey–Hayes shall reinstate the health care benefit plans that were in effect prior to January 1, 1994 for those persons eligible under the collective bargaining agreements for the SPECO, Gunite, and Heintz Divisions. This order shall remain in effect until further order of this court.

**SO ORDERED.**