Richard **HELWIG**, Richard Bayless, August Boetsch, Donald Barber, Joseph Sorna, and Louis Kayser, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

**KELSEY–HAYES COMPANY,**
Defendant.

Civ. A. No. 94–70036.

United States District Court,
E.D. Michigan,
Southern Division.

July 6, 1994.

Diane M. Soubly, Richard E. Russel and Mark T. Nelson, Butzel Long, PC, Detroit, MI, for Kelsey–Hayes Co.

Andrew A. Nickelhoff and John R. Runyan, Detroit, MI, for Louis H. Kayser.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

GADOLA, District Judge.

This matter is before the court on plaintiffs' motion for a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. Plaintiffs represent a proposed class of individuals seeking relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, from defendant Kelsey–Hayes Company. Plaintiffs are seeking reinstatement of retiree benefits that they allege they are due under the terms of a welfare benefit plan. The court held a hearing on plaintiffs' motion on June 8, 1994. For the reasons discussed below, the court will grant plaintiffs' motion.

### I. Background

Plaintiffs are retired salaried employees of defendant or their surviving spouses and dependents.[1] Plaintiffs represent a proposed class that numbers approximately 5,300 individuals. Defendant Kelsey–Hayes is a supplier and manufacturer of automotive parts that conducts business in several states. Plaintiffs claim that defendant breached its promise to provide them with lifetime retiree health coverage under the terms of previous benefit packages.

Over approximately the past two years defendant has instituted a number of changes to the health package that it provides to its salaried retirees. Plaintiffs now seek an injunction ordering defendant to reverse these changes. On January 1, 1992, defendant began requiring monthly contributions for health benefits for all retirees under the age of sixty-five. It also ceased medicare reimbursement for all salaried retirees, and it increased the prescription drug co-payment. On January 1, 1993, defendant again increased contributions that it required from retirees under sixty-five. The most significant changes to plaintiffs' health benefits occurred on January 1, 1994. Defendant insti-

tuted a twenty percent co-payment with an annual maximum of $2,000 per person and $4,000 per family. Retirees are now required to pay annual deductibles of $300 per person and $600 per family. Previously, plaintiffs were not required to pay either deductibles or co-payments. In addition, defendant required new monthly premiums of $2 per individual or $4 for family coverage, established a lifetime maximum of $500,000 in coverage, and again increased the prescription drug co-payment. Plaintiffs received notice of these changes in April of 1993.

Plaintiffs filed this action on January 5, 1994, four days after the effective date of defendant's latest changes to its salaried retiree health coverage. Plaintiffs are seeking an injunction ordering defendant to restore the benefits package that they were receiving prior to January 1, 1992. They claim that defendant made these changes to their health coverage in violation of an ERISA benefit plan as expressed in various booklets and summary plan descriptions that were distributed to employees. In addition, plaintiffs contend that the changes to their benefits plan constitute a breach of fiduciary duty under ERISA that requires defendant to enforce the plan according to its allegedly vested provisions. Finally, plaintiffs contend that the principle of equitable estoppel should apply to the enforcement of an ERISA plan based upon oral guarantees made to them by defendant's agents concerning the nature of retiree medical benefits that were promised to them.

Defendant contends that the master insurance agreements that established medical coverage for plaintiffs allow for termination with thirty days notice. Furthermore, defendant relies on a more recent summary plan distributed to retirees that reserves a right to terminate or alter the benefits plan to the company. In addition, defendant argues that neither a claim for equitable estoppel nor breach of fiduciary duties is stated in the

---

1. In another case before this court, *Golden v. Kelsey–Hayes Co.,* 845 F.Supp. 410 (E.D.Mich. 1994), unionized retirees of Kelsey–Hayes have filed a class action alleging breach of a collective bargaining agreement and a welfare benefit plan resulting from reductions in their medical insurance coverage. This court granted a preliminary injunction to plaintiffs restoring their full benefits during the pendency of the litigation.

context of a reduction in health insurance provided under an ERISA benefits plan.

## II. Standard of Review for Preliminary Injunctions

■ Plaintiffs are seeking a preliminary injunction that requires defendant to reinstate the health benefits that it provided to retirees prior to implementing the modifications of the past two years. The decision of whether or not to issue a preliminary injunction lies within the discretion of the district court. *CSX Transp., Inc. v. Tennessee State Bd. of Equalization,* 964 F.2d 548, 552 (6th Cir.1992). When determining whether to issue a preliminary injunction, a district court should address four factors:

1. the plaintiff's likelihood of success on the merits of the action;

2. the irreparable harm to plaintiff that could result if the court does not issue the injunction;

3. whether the interests of the public will be served; and

4. the possibility that the injunction would cause substantial harm to others.

*Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 262 (6th Cir.1988); *In re DeLorean Motor Co.,* 755 F.2d 1223 (6th Cir.1985); *Mason County Medical Ass'n v. Knebel,* 563 F.2d 256 (6th Cir.1977).

## III. Likelihood of Success on the Merits

In order for plaintiffs to be successful in their motion for a preliminary injunction, they must establish a substantial likelihood of success on the merits of their underlying claims. Plaintiffs are seeking relief under: 29 U.S.C. § 1132(a)(1)(B) of ERISA for enforcement of a welfare benefit plan, 29 U.S.C. § 1103(a) of ERISA for breach of a fiduciary duty, and promissory estoppel. The court will now examine plaintiffs' likelihood of success under each of these claims of relief.

### A. Enforcement of a Welfare Benefit Plan

■ ERISA makes a clear distinction between employee pension plans and employee welfare plans. *Gill v. Moco Thermal Indus., Inc.,* 981 F.2d 858, 860 (6th Cir.1992); *Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1297 (6th Cir.1991). Pension plans provide

for vested benefits, while "[h]ealth insurance plans are employee welfare plans, for which there is no vesting requirement under ERISA." *Gill,* 981 F.2d at 860; *Musto v. American Gen. Corp.,* 861 F.2d 897, 912 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). As in any other contract, however, the parties to a welfare benefits plan are free to agree to the vesting of health insurance coverage for retirees under an ERISA plan. In addressing a claim for vested retiree health benefits, the court "must look to the intent of the parties and apply federal common law of contracts to determine whether welfare benefits have vested." *Gill,* 981 F.2d at 860. In making this determination, the court must first look to the language contained in the "plan documents" in order to decide if plaintiffs' benefits are vested. *Boyer v. Douglas Components Corp.,* 986 F.2d 999, 1005 (6th Cir. 1993); *see Musto,* 861 F.2d at 900–01 (court should look to "written instrument;" court also looked to other documents); *In re White Farm Equipment Co.,* 788 F.2d 1186, 1193 (6th Cir.1986) (court examined summary booklets distributed to employees). "However, if the plan documents are ambiguous with respect to a particular term, then, under federal common law, a court may use traditional methods of contract interpretation to resolve the ambiguity, including drawing inferences and presumptions and introducing extrinsic evidence." *Boyer,* 986 F.2d at 1005.

■ In this case, the parties both rely on various insurance agreements, summary plan descriptions, and employee booklets in support of their contrary claims. Plaintiffs also rely on extrinsic evidence in the form of verbal assurances given to employees over the past twenty years. Before examining the particular documents, however, the court will discuss the various arrangements defendant had with several insurance companies to provide health coverage to salaried employees and retirees. Up until January 1, 1988, defendant contracted with Blue Cross and Blue Shield of Michigan ("Blue Cross") to provide health insurance. Beginning in 1988, defendant replaced Blue Cross with the Connecticut General Life Insurance Company ("CIGNA"). CIGNA was then replaced with the

John Hancock Mutual Life Insurance Company ("John Hancock") in 1992. John Hancock is defendant's current health insurance provider.

In support of their claim for vested retiree health benefits, plaintiffs rely upon summary plan description booklets distributed to them, benefits summary certificates, and verbal assurances made by defendant's agents over the past twenty year period. On the other hand, defendant relies upon the provisions of the master insurance agreements, the language of certain summary description booklets, and certain agreements signed by over one hundred salaried employees allegedly releasing any claim to vested benefits. The court will examine in detail each of the documents presented to the court by the parties in determining the "intent" of the ERISA benefits plan for retirees.

Plaintiffs rely most heavily upon two employee booklets that were issued by defendant. At least as early as 1977, plaintiffs allege that defendant distributed a booklet entitled "Your Health Care Benefits as a Salaried Employe [sic] of the Kelsey–Hayes Company" to employees in its Detroit, Romulus, Jackson, and R & D facilities. Plaintiffs represent that this booklet is typical of the booklets distributed at Kelsey–Hayes facilities in other states. The booklet describes the health insurance plan for salaried employees, and it appears to be a summary plan description issued as required by 29 U.S.C. §§ 1021(a), 1022(a)(1), and 1024(b) of ERISA.

In its introduction, the booklet states that the "Kelsey–Hayes Company provides protection for you and your eligible dependents against a wide range of health care expenses while you are an active employee and after your retirement." Plaintiffs' exhibit A, at 1. In a section entitled "KELSEY–HAYES PAYS THE FULL COST FOR," the booklet states as follows:

When you are retired, your Health Care coverages, except for vision, are continued without cost to you.

If you terminate employment with Kelsey–Hayes at age 65 or older for any reason other than discharge, all of your Health Care coverage, except vision care, will be continued for the rest of your life without cost to you.

Kelsey–Hayes also pays the full cost of Health care coverages, except vision care, for surviving spouses and eligible children of deceased pensioners.

*Id.* at 9. The booklet makes no claims about the ability of defendant to modify or terminate any of the benefits detailed therein. Defendant points out, however, that on page seven of the booklet, it states that the

foregoing is intended only as an outline of your Kelsey–Hayes Health Care Coverages. Actual governing provisions are contained in the applicable benefit certificates and any riders thereto as well as detailed benefit schedules or similar documents provided by the carriers which are available upon request from the insurance office at you work location.

*Id.* at 7. Defendant claims that this provision informs the employee that he cannot rely upon the representations in the summary description, but instead needs to look at the insurance certificate itself. Plaintiffs contend, however, that this provision could easily be misread as only applying to the first seven pages of the booklet given the use of the word "foregoing," and not the provision on page nine which promises continued health benefits through retirement.

Plaintiffs also rely upon statements made in another booklet issued by defendant entitled "Employee Benefit Handbook for Salaried Employees Kelsey–Hayes Company." Plaintiffs' exhibit B. This booklet was apparently issued in early 1984 to employees at the Detroit, Jackson, R & D, and Romulus facilities. It also appears to be a summary plan description that was issued in compliance with ERISA. The booklet states that the "Kelsey–Hayes Company provides protection for you and your eligible dependents against a wide range of Health Care expenses while you are an active employee and after your retirement." *Id.* at I–1. In a section entitled "CONTINUATION OF INSURANCE COVERAGE UPON RETIREMENT," the booklet states that "[a]ll Health Care coverages, except Major Medical, *will be continued for you and your dependents*

*during your retirement years at the expense of the Company.*" *Id.* at V–3 (emphasis added). It also provides that "KELSEY–HAYES PAYS THE FULL COST OF all Health Care coverages and group insurance benefits." *Id.* at V–1. Plaintiffs contend that similar promises were made in summary booklets distributed at other Kelsey–Hayes facilities, except that the specific benefits provided were different depending on the coverage provided to employees at the particular facility. Again, plaintiffs point out that nowhere in the booklet does defendant reserve to itself the right to modify or terminate any of the benefits described in the booklet. The booklet does indicate again, however, that it merely "present[s] general information and is designed to give you an understanding of the many benefits available to you," but that "[e]ach Benefit Plan has its own terms and conditions which in all respects control the benefits provided."

Defendant relies upon the master insurance agreements and a recent summary plan description in support of its claim that plaintiffs do not have vested health coverage.[2] In defendant's agreements with Blue Cross that covered the health benefits plan through 1987, it states as follows:

> A. TERM: this contract is an agreement for the period indicated on the payment notice sent to the subscriber, the employer, or remitting agent and will be renewed by

payment of the subscription rate unless written notice of termination is given to [Blue Cross], or by [Blue Cross] to the subscriber, the employer, or remitting agent, not less than thirty (30) days prior to the date on which termination is to be effective.

Defendant's exhibit 3N. The master insurance agreements for CIGNA and John Hancock also provided for termination of the agreement upon written notice by either Kelsey–Hayes or the particular insurance company. Defendant claims that these provisions of the agreement give it the right to terminate or modify the health benefits it provides to its salaried retirees.

In two recent Sixth Circuit opinions, the court found that similar provisions in the master agreements between employers and insurance companies gave the employer the right to terminate or modify the health benefits that it provided to its retirees.[3] *Boyer v. Douglas Components Corp.,* 986 F.2d 999, 1005 (6th Cir.1993); *Gill v. Moco Thermal Indus., Inc.,* 981 F.2d 858, 860 (6th Cir.1992). In each case, retirees brought an action under ERISA seeking vested health benefits under a welfare benefit plan.

Although this court is bound by these decisions, the instant case is distinguishable because of the representations made by defendant in summary plan descriptions concerning the duration of retiree health coverage.

2. Defendant also argues that plaintiffs' action is barred by the statute of limitations because changes were made to the retiree benefits plan in 1984, 1985, and 1986. Defendant claims that because plaintiffs filed their claim approximately eight years after these changes were made, it is outside of the six year statute of limitations period for contract actions that would likely apply. However, in the instant action, plaintiffs do not seek to reverse the changes made in the mid-eighties, rather, they seek to reverse changes to the benefits plan enacted since January 1, 1992. The changes made in the mid-eighties are not significant enough to bar plaintiffs' claim in this matter. The changes in 1984 and 1985 relate to the creation of cost-containment and pre-certification procedures. They did not impose any real costs upon retirees. The change that occurred in 1986, increasing the drug co-payment to $5.00 from $3.50, does not compare with the many, more significant changes that have occurred over the last two years. As a result, plaintiffs' failure to file suit to reverse the minor change of 1986,

does not bar them from challenging the more recent and far more significant changes instituted over the past two years.

3. Although it is bound by these decisions, the court notes that their reliance upon insurance termination provisions is problematic at best. These master insurance contracts represent the agreements between the suppliers of health coverage and the employer. They do not represent the agreements between employer and employee concerning the duration of retiree health benefits. These termination provisions represent an "out" for the insurer and the employer that allows each to choose another commercial partner. In the instant case, defendant appears to have utilized these provisions in the past not in relation to retiree benefits, but instead to terminate Blue Cross and CIGNA so that they could be replaced by a possibly more favorable insurer. *See also Boyer,* 986 F.2d at 1005–06 (similar criticism voiced in Judge Jones' concurring opinion).

In *Gill*, the only plan document examined was the insurance policy that provided for termination upon thirty days written notice. *Id.* at 860. It appears that the *Gill* plaintiffs merely relied upon verbal assurances that were made to them by their employer. In *Boyer*, the court examined summary booklets provided to employees that seemed to indicate that health benefits would be continued through retirement. *Boyer*, 986 F.2d at 1001. However, these booklets also contained unambiguous provisions reserving to the employer the right to change or discontinue the plan at anytime. *Id.*

In the instant case, plaintiffs have presented summary plan descriptions from 1977 and 1984 that indicate that retiree benefits were vested. The summaries indicate that health coverage "will be continued for you and your dependents during your retirement years at the expense of the Company" and for those employees who leave the company without a pension after age sixty-five, their benefits "will be continued for the rest of [their lives] without cost." In addition, the booklets distributed by defendant contain no reservation of rights to terminate or modify the plan at will as did the summaries in *Boyer*. As a result, there is a direct contradiction between the plan insurance agreements and the plan summaries given to employees.

 In order to resolve the apparent contradiction, the court looks to guidance from two decisions of the Sixth Circuit concerning the weight that should be given to ERISA summary plan descriptions. In *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir.1988), the court held that "statements in a summary plan are binding and if the statements conflict with those in the plan itself, the summary shall govern." *See also Rhoton v. Central States, S.E. & S.W. Areas Pension Fund*, 717 F.2d 988, 989–91 (6th Cir.1983). *But cf. Musto v. American Gen. Corp.*, 861 F.2d 897, 907 (6th Cir.1988) (court declines to address effect of written representations outside of the primary plan document), *cert. denied*, 490 U.S.

1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). The basis for this holding is that ERISA's requirement of summary plan descriptions was intended to provide employees with a document explaining their benefits in terms comprehensible to the average participant. As the Sixth Circuit has noted, "[g]iven the [summary plan description's] important role under the ERISA framework, it is natural for courts to hold the [summary plan description] controlling when it conflicts with the plan itself." *Flacche v. Sun Life Assur. Co.*, 958 F.2d 730, 736 (6th Cir.1992) (court held that terms of an SPD would be controlling, but that terms of a benefits certificate were non-binding). Without this result, unscrupulous employers could issue summary plans containing misleading information, but then avoid liability by referencing the technical master insurance agreement. Furthermore, by giving binding effect to plan summaries, employers have an added incentive to give accurate information to their employees. Several other circuits have come to similar conclusions. *See, e.g., Aiken v. Policy Management Sys. Corp.*, 13 F.3d 138 (4th Cir. 1993); *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907 (2d Cir.1990); *McKnight v. Southern Life and Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir.1985); *Govoni v. Bricklayers, Masons & Plasterers Int'l Union*, 732 F.2d 250, 252 (1st Cir.1984). Thus, even though the language of the master insurance agreements gives defendant the right to terminate benefits, this court will give controlling weight to the representations made to plaintiffs in the summary plan descriptions.[4]

 Even if the representations in the summary booklets were not conclusively binding, the contradictory statements in the plan documents create an ambiguity in the contract. In such cases, the court must look to other evidence in order to determine the intent of the parties to the agreement. *Boyer*, 986 F.2d at 1005. In *UAW v. Yard–Man, Inc.*, 716 F.2d 1476 (6th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79

4. The court will not give controlling weight to the provisions in the summary plans, cited by defendant, that reference the master insurance agreements and give them priority. As the court in *Hansen v. Continental Ins. Co.*, 940 F.2d 971,

982 (5th Cir.1991) stated, "to give effect to such a disclaimer would wholly undermine the rule that the statements of the summary plan description are binding."

L.Ed.2d 234 (1984), the Sixth Circuit held that where a collective bargaining agreement is ambiguous on the issue of the duration of retiree benefits, courts should apply an inference that retiree benefits were intended to vest for life. *Id.* at 1482; *see also Smith v. ABS Indus., Inc.,* 890 F.2d 841 (6th Cir. 1989); *Policy v. Powell Pressed Steel Co.,* 770 F.2d 609 (6th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1202, 89 L.Ed.2d 315 (1986); *Weimer v. Kurz–Kasch, Inc.,* 773 F.2d 669 (6th Cir.1985); *UAW v. Cadillac Malleable Iron Co.,* 728 F.2d 807 (6th Cir. 1984). Because of the nature of retiree benefits as deferred compensation, they "are in a sense 'status' benefits which, as such, carry with them an inference that they continue so long as the prerequisite status is maintained." *Yard–Man,* 716 F.2d at 1482. The Sixth Circuit has since held that this inference also applies outside of the context of collective bargaining agreements where salaried employees are involved. *In re White Farm Equipment Co.,* 788 F.2d 1186, 1193 (6th Cir.1986).[5] Thus, the guidance in *Yard–Man* would indicate that the ambiguity in this case should be resolved in favor of plaintiffs.

In order to resolve the ambiguity, plaintiffs have also presented extrinsic evidence in the form of affidavits from members of the proposed class who claim to have been given assurances that they would receive unmodified, lifetime benefits from defendant. *See Smith v. ABS Indus., Inc.,* 890 F.2d 841, 846–47 n. 1 (6th Cir.1989) (court considers representations made to employees). *But cf. Musto,* 861 F.2d at 909–10 (court indicates reluctance to rely on extrinsic oral statements in interpreting ERISA plan). Plaintiffs have also presented affidavits from policy makers, including the vice-president for human resources, that state that it was the policy of Kelsey–Hayes to provide lifetime health benefits to retirees. This evidence, along with the representations made in the summary booklets and the *Yard–Man* inference, convinces the court that plaintiffs have demonstrated a substantial likelihood of success for the claims of those salaried employees who retired during the period of time when the 1977 and the 1984 summary plan descriptions controlled the terms of retiree health benefits.[6]

In opposing plaintiffs' motion, defendant has presented additional insurance booklets and summary plan descriptions that it claims indicate that in 1990, retiree health coverage was no longer vested, but was instead subject to modification or outright termination. In May 1990, defendant distributed to its retirees a document entitled "Your Group Insurance Plan." In this plan description, defendant stated that the "Company reserves the right to modify, suspend or terminate the benefits described herein at any time." Defendant's exhibit 3L, at 4. It also states that retiree insurance would cease on "the date the policy was cancelled." *Id.* at 74.

In several cases, the Sixth Circuit has firmly established that explicit provisions that reserve the right to terminate or alter benefits to the employer defeat ERISA claims for vested retiree benefits. *See Musto,* 861 F.2d at 906–07 (company's right to change plan not in conflict with apparent promise of vested retiree benefits); *In re White Farm Equipment,* 788 F.2d at 1192–93 (where power to terminate welfare plan has been reserved, it may be exercised); *see also Boyer,* 986 F.2d at 1004–05 (6th Cir.1993) (employer reserved right to change or discontinue plan at any time in summary plan); *Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1291, 1295, 1297 (6th Cir.1991) (court stressed importance of provision reserving employer's right to terminate). The summary plan description provided to retirees in 1990 contains reservation of rights provisions

---

**5.** During oral argument, defense counsel repeatedly claimed that the Sixth Circuit in *Boyer* declared that the *Yard–Man* inference does not apply in the context of salaried retiree cases. In actual fact, however, the contrary is true. The court in *Boyer* stated that where "the plan documents are ambiguous with respect to a particular term, then under federal common law, a court may use traditional methods of contract interpretation to resolve the ambiguity, including *draw-*

*ing inferences and presumptions* and introducing extrinsic evidence." *Boyer,* 986 F.2d at 1005 (citing *White Farm,* 788 F.2d at 1193) (emphasis added).

**6.** The same would be true for the claims of those surviving spouses and dependents of employees who died during the period governed by the summary booklets.

similar or identical to those addressed by the Sixth Circuit in these cases.

The court finds, however, that the 1990 summary plan does not change or affect the welfare benefit plan provided to defendant's salaried retirees. The summary plan was only distributed to *retirees*, not employees. Thus, the representations and the reservation of rights contained therein would not even apply to current employees. Furthermore, the reservation of rights clause does not apply to those individuals who were already retired when they received the 1990 summary plan because their benefits would have already vested upon their retirement from the company. After retirement, it was, and is, too late for defendant to change the terms of the welfare benefit plan that it provides its retirees.[7] As a result, the 1990 summary plan does not affect the rights of employees who retired in 1990 and thereafter because their benefit plan was still governed by the 1977 or 1984 summary plan descriptions issued to them as employees during their period of employment.[8]

Defendant also relies upon an informational booklet entitled "Building the New Fruehauf Corporation: Your Retirement Plan" to support its claim that it had expressly reserved its right to terminate or alter the plan as early as 1986. However, it appears that this booklet is not a summary plan description and there is no clear evidence of when it was ever distributed to employees.[9] *See*

7. Defendant attempts to rely upon *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929 (5th Cir. 1993) in support of its claim that it retained the right to terminate or alter the benefits it provides to retirees. However, in *Wise,* the employer merely announced that any current employee who retired after a specified date would no longer be eligible for certain benefits during that individual's retirement. *See infra* note 8. The Fifth Circuit merely found that the employer retained that right under ERISA. *Id.* at 934–36.

Similarly, it is clear that defendant has always retained the right to alter the retiree health benefits that it offers to current employees when they retire. The issue in this case is whether defendant, in its past dealings with its employees before their particular retirement date, retained the right to alter or terminate benefits after that retirement date.

In *Wise,* the employer had issued several SPDs that did not contain reservation of rights provisions. *Id.* at 932–33. Once this oversight had been discovered, the employer issued an SPD that reserved its right to terminate benefits. It then announced that it would eliminate retiree benefits offered to current employees who retired after a certain date. There was never a dispute over whether the employer could change the benefits it offered to those who had already retired. The company agreed that the benefits for those employees who had retired before the new SPD was issued had already vested based upon the language of prior SPDs. Further, the court noted that although ERISA allows employers to modify or discontinue welfare benefit plans, an employer's welfare plan may designate a vested benefit. *Id.* at 937 (citing *In re White Farm Equipment Co.,* 788 F.2d 1186, 1193 (6th Cir. 1986).

In the same way, defendant in this case made certain promises to its employees in summary plans without reserving its right to terminate those benefits after retirement. Because those employees retired before a new summary plan was issued that reserved termination rights to defendant, their right to those benefits has vested as promised by the plan. The discussion in *Wise* concerning proper vesting language is also inapplicable because that discussion concerned alleged promises made to "yet-unretired workers" and not to those who had already taken their retirement under the provisions of the prior SPDs. *Id.* at 938.

8. The court notes that its first inclination concerning the 1990 summary plan was to bifurcate its injunction for salaried retirees between those employees who retired before June 1, 1990 and those who retired after that date. However, the parties have advised the court that the 1990 summary plan was never distributed to employees, only retirees. As a result, those employees retiring after the issuance of the 1990 summary plan would still look to the 1984 summary for their benefits.

Another summary plan description, entitled "Retiree Health Care Plan" and effective January 1, 1994, was apparently distributed by defendant sometime in 1993 to both retirees and employees in order to coincide with the changes made to the plan on January 1, 1994. Defendant's exhibit 3J. It contains an express reservation of rights to modify or terminate the plan. As a result, under the reasoning set forth in this memorandum opinion, any of defendant's employees who have retired on or after January 1, 1994 would not have any vested health benefits as retirees and would not benefit from the court's preliminary injunction.

9. Defendant has submitted the affidavit of Sandra Williams, which contains several additional documents concerning benefits for employees and retirees. The court finds, however, that these documents do not indicate that defendant had reserved to itself the right to terminate or alter retiree benefits, or that retiree benefits are

*Flacche v. Sun Life Assur. Co.*, 958 F.2d 730, 736 (6th Cir.1992) (reliance on non-summary plan document not binding on employer). Without a bright-line rule limiting consideration of documentary materials to summary plans and other official plan documents, the objectives of ERISA would be frustrated and the court would be inundated with irrelevant and improper information.

Finally, defendant has alleged that over one hundred salaried employees signed special retirement packages in which they agreed that Kelsey–Hayes reserved to itself the right to terminate or change the retirement plan at any time. The court finds that any member of the proposed class that signed such an agreement is not entitled to unmodified health coverage under the court's injunction to be issued in this case. The court's order in this matter shall not apply to any individual who signed an acknowledgement of defendant's right to terminate the retirement plan.

In summary, the court finds that plaintiffs have demonstrated a substantial likelihood of success on the merits of their claim for vested retiree health benefits.

### B. Breach of Fiduciary Duties

■ In addition to seeking recovery of retiree health benefits under 29 U.S.C. § 1132(a)(1)(B) of ERISA, plaintiffs also allege, in Count II of their complaint, that defendant has breached its fiduciary duties under ERISA to pay them benefits allegedly guaranteed by the employee benefit plan. 29 U.S.C. §§ 1104(a)(1)(D), 1132(a)(3). The court finds, however, that plaintiffs have not demonstrated a substantial likelihood of success for their breach of fiduciary duty claim. It is clear that "when an employer decides to establish, amend, or terminate a benefits plan, as opposed to managing any assets of the plan and administering the plan in accordance with its terms, its actions are not to be judged by fiduciary standards." *Musto*, 861 F.2d at 912. The Sixth Circuit has held that a company "does not act in a fiduciary capac-

ity when deciding to amend or terminate a welfare benefits plan." *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947 (6th Cir.), *cert. denied*, 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990); *see also Moore v. Reynolds Metals Co. Retirement Program*, 740 F.2d 454, 456 (6th Cir.1984), *cert. denied*, 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985); *Cunha v. Ward Foods, Inc.*, 804 F.2d 1418, 1432–33 (9th Cir.1986) (decision to terminate pension plan not related to fiduciary duty); *Chait v. Bernstein*, 645 F.Supp. 1092 (D.N.J.1986) (decision to terminate pension plan not governed by ERISA fiduciary duty), *aff'd*, 835 F.2d 1017 (3d Cir.1987); *Amato v. Western Union Int'l, Inc.*, 596 F.Supp. 963, 968 (S.D.N.Y.1984) (fiduciary standards only apply when defendant functions as plan administrator), *modified*, 773 F.2d 1402, 1416–17 (2d Cir.1985), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986).

■ In the instant action, plaintiffs claim that defendant breached its fiduciary duty when it altered the health benefits that it provides its retirees. Because defendant's fiduciary duty is not implicated by plaintiffs' claim for vested retiree benefits, plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of their claim.

### C. Equitable Estoppel

In Count III of their complaint, plaintiffs are seeking reinstatement of benefits based upon principles of promissory estoppel. Defendant claims that any state law based estoppel claim is preempted and that the circumstances of this case make estoppel under ERISA inapplicable.

■ The court finds that plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of their claim under estoppel. Any state law claim of promissory estoppel is preempted by 29 U.S.C. § 1144(a) of ERISA. *See Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991), *cert. dismissed*, —— U.S. ——, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992); *Davis v.*

---

not vested. The SPDs submitted by defendant do not apply to the benefits at issue in this matter, nor are they addressed to employees with reference to their future retiree health benefits. *See* Williams Affidavit, exhibits A, B, C, E, and G. In

addition, two of the documents appear to be mere informational booklets and not summary plan descriptions, and thus they do not have any controlling weight in the determination of benefits.

*Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 696 (6th Cir.1989), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990); *see also Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 1551–52, 95 L.Ed.2d 39 (1987). In addition, plaintiffs have not established a proper claim for equitable estoppel under ERISA.

■ The Sixth Circuit has recognized that principles of equitable estoppel may be applicable in the context of the alteration or termination of retiree health benefits provided pursuant to an employee welfare plan. *See Gill v. Moco Thermal Indus., Inc.,* 981 F.2d 858, 860 (6th Cir.1992) (no factual basis for application of estoppel in this instance); *Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1300 (6th Cir.1991) (estoppel principles applicable to welfare benefit plans, but not pension plans). In *Armistead,* the court found that equitable estoppel applied where thirty-nine employees chose to retire early in reliance upon company representations that they would receive lifetime health benefits when a factory was closed. *Id.* at 1290, 1292, & 1298–99.

■ The elements of equitable estoppel are as follows: (1) representation of material fact; (2) awareness of true facts by party to be estopped; (3) an intention by the party to be estopped that the representation be acted upon; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by party seeking estoppel. *Id.* at 1298 (citing *Apponi v. Sunshine Biscuits, Inc.,* 809 F.2d 1210, 1217 (6th Cir.1987), *cert. denied,* 484 U.S. 820, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987)). Plaintiffs allege that for many years company representatives told salaried employees that their health benefits would continue unmodified throughout their retirement. In reliance upon these representations, plaintiffs claim that they acted to their detriment.

The court finds that plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of their estoppel claim. Plaintiffs have failed to show that they took any detrimental action as a result of defen-dant's representations. *See also Gordon v. Barnes Pumps, Inc.,* 999 F.2d 133, 137–38 (6th Cir.1993) (estoppel claim fails for lack of detrimental reliance). The facts presented in *Armistead* present a clear case of specific detrimental reliance taken directly as a result of the representations made by company agents, while plaintiffs in the instant action have presented merely a general reliance over many years upon Kelsey–Hayes' representations concerning retiree benefits.

**IV. Irreparable Harm to Plaintiffs**

■ If a preliminary injunction is not entered, plaintiffs allege that they will suffer irreparable harm because they will be forced to choose between paying for needed medical procedures and paying for basic necessities. Plaintiffs are retirees or surviving spouses of retirees who allegedly do not have the financial resources necessary to afford the new medical costs that will result from implementation of the changes to the plan. Plaintiffs contend that they may be forced to forego needed medical care because they would have to absorb part of the cost of the care under defendant's modified benefits plan. In support of their allegations, plaintiffs have submitted affidavits from individual retirees detailing the impact of the modifications of the benefits plan to their finances.

Defendant claims that plaintiffs have not established irreparable injury because they have not presented affidavits from any of the named plaintiffs. In addition, defendant denies that irreparable harm is likely given the fact that plaintiffs are salaried retirees who are less likely to be forced to forego necessities in order to pay for medical care because of more generous pensions or greater savings made during their employment. Defendant also discounts affidavits presented by putative members of the class action because plaintiffs have not yet sought class certification under Rule 23 of the Federal Rules of Civil Procedure.

The court finds, however, that plaintiffs have established that they would suffer irreparable injury absent injunctive relief. Numerous courts have found that reductions in retiree health insurance coverage constitute irreparable harm, meriting a prelimi-

nary injunction. *See, e.g., United Steelworkers of America v. Textron, Inc.,* 836 F.2d 6 (1st Cir.1987) (retirees as a group have less resources and are more vulnerable to emotional distress due to the imposition of additional insurance costs); *Golden · v. Kelsey–Hayes Co.,* 845 F.Supp. 410 (E.D.Mich.1994); *Schalk v. Teledyne, Inc.,* 751 F.Supp. 1261 (W.D.Mich.1990) (because retirees live on fixed incomes, small increases in expenses create extreme financial hardship; they are more likely to suffer uncertainty and worry over the new costs associated with the modified plan), *aff'd,* 948 F.2d 1290 (6th Cir.1991); *Mamula v. Satralloy, Inc.,* 578 F.Supp. 563 (S.D.Ohio 1983).

The court finds that plaintiffs have demonstrated that similar harm would befall salaried retirees and their surviving spouses and dependents were the modifications to plaintiffs' health benefits allowed to continue. Merely because some of the plaintiffs were high-level executives with Kelsey–Hayes who would not necessarily face hardship as a result of reductions in health insurance does not change the fact that the proposed class of plaintiffs in this case contains a large number of individuals who would face irreparable harm. Many of the proposed class members are retired secretarial or clerical workers who may face even worse hardships, given their lack of union protection, than those faced by unionized retirees in *Textron* and *Schalk.* In addition, the court will take into consideration the irreparable harm faced by putative class members before class certification because of the nature of injunctive relief at this stage of the litigation. *Lapeer County Medical Care Facility v. Michigan,* 765 F.Supp. 1291, 1301 (W.D.Mich.1991) (prior to certification, court treated case as class action); *Musto v. American General Corp.,* 615 F.Supp. 1483, 1492 (W.D.Tenn.1985) (preliminary injunction may issue prior to certification), *rev'd on other grounds,* 861 F.2d 897 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). Given the circumstances presented in this case, the court finds that plaintiffs have established that they will suffer irreparable harm if this court does not order defendant to reinstate their health insurance benefits.

## V. Harm to Others

If a preliminary injunction is entered ordering defendant to reinstate the health benefits that it had previously provided to its retirees, defendant will be forced to pay the full benefits that it had provided prior to January 1, 1992. Thus, if a preliminary injunction is entered, defendant will suffer a financial loss during the pendency of this litigation that it may recoup if it is ultimately successful on the merits. Defendant claims that it will cost an additional $150,000 per month, over the cost of the modified plan, to maintain full benefits for plaintiffs. However, defendant has made no showing that requiring it to reinstate the old retiree benefit plan would cause it severe financial hardship. In fact, defendant has paid the full cost of health benefits for its retirees for many years prior to the recent changes

The court finds that the harm to defendant of reinstating its former retiree health benefits would not outweigh the harm suffered by plaintiffs. Several other courts have found similarly that the harm caused an employer that is required to maintain health benefits because of a preliminary injunction is outweighed by the harm caused to retirees forced to go without medical care or forced to choose between basic necessities in order to pay premiums and deductibles. *Schalk,* 751 F.Supp. at 1268; *Shultz v. Teledyne, Inc.,* 657 F.Supp. 289, 293 (W.D.Pa.1987). Defendant has demonstrated no special circumstances in this case that would indicate that the cost of maintaining full benefits for a number of its retirees would force it into bankruptcy or similar economic distress. The court finds that the harm caused defendant by an injunction requiring it to reinstate all health benefits previously provided to salaried retirees until this litigation is resolved does not outweigh the harm caused to plaintiffs.

## VI. Interests of the Public

Plaintiffs allege that the public interest favors a preliminary injunction. Plaintiffs claim that ERISA strongly favors the protection of the rights of employees guaranteed by welfare benefit plans. ERISA pro-

vides that the policy behind it is to "protect the interests of participants in employee benefit plans ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, ... by providing for appropriate remedies, sanctions, and ready access to the Federal Court." 29 U.S.C. § 1001(b). In *Schalk*, the court indicated that the "public interest lies in protecting the legitimate expectations of retirees that their health insurance will be provided for the rest of their lives." *Schalk*, 751 F.Supp. at 1268.

Defendant claims that the public interest lies in allowing companies to distribute the burden of greater health care costs to the beneficiaries of the coverage. Without such burden shifting, companies that create jobs and enrich communities would be hurt.

In the circumstances of this case, however, the court finds that the public interest favors issuance of a preliminary injunction reinstating full health benefits to those plaintiffs that have demonstrated a substantial likelihood of success on the merits of their claims.

### VII. Security Bond

Pursuant to Rule 65(c), no "preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered" by defendant. Fed. R.Civ.P. 65(c). A district court must expressly consider the question of requiring a bond before issuing a preliminary injunction. *Roth v. Bank of the Commonwealth*, 583 F.2d 527 (6th Cir.1978). The amount of security required and whether a bond is needed is up to the discretion of the district court. At oral argument, the court instructed the parties to submit briefs on the issue of the amount of bond, if any, that should be required in this case.

Defendant estimates that if it is required to reinstate its full health benefits for plaintiffs, it will cost the company approximately $150,000 a month. As a result, defendant has requested a bond of $250,000. In *Schalk*, based on defendant's claim that it would cost an additional $90,000 per month to maintain its old health plan, the district court required plaintiffs to post a $50,000 bond to support a preliminary injunction containing similar modifications of a retiree health plan. *Schalk*, 751 F.Supp. at 1269. In *Golden v. Kelsey–Hayes Co.*, 845 F.Supp. 410 (E.D.Mich.1994), a similar action brought by unionized retirees of defendant, the court required a bond of $100,000 based on defendant's representation that the injunction would cost the company approximately $160,000 per month. Plaintiffs contend that no bond should be required in this matter, or that they should only have to post a nominal amount.

Under the circumstances of this case, the court finds that a bond of $250,000 would be excessive. However, given the burden placed on defendant and following this court's similar ruling in *Golden*, the court will require plaintiffs to post a bond of $95,000 before it will issue a preliminary injunction. A decision requiring no bond or only a nominal bond would be inappropriate in such a matter as this where defendant has strongly denied liability, there exist multiple and conflicting documents and affidavits, and where the state of the law in this circuit is arguably cloudy.

### VIII. Conclusion

The court will grant plaintiffs' motion for a preliminary injunction ordering defendant to reinstate the health benefits to retirees and surviving spouses as provided before January 1, 1992. Plaintiffs have demonstrated that they will likely prevail on the merits and that they will suffer irreparable harm absent an injunction. In addition, the harm suffered by defendant as a result of an injunction would be outweighed by the harm suffered by plaintiffs without such relief.

### ORDER

**THEREFORE, IT IS HEREBY ORDERED** that plaintiffs' motion for a preliminary injunction is **GRANTED.**

**IT IS FURTHER ORDERED** that upon the posting of a $95,000 security bond by plaintiffs, defendant Kelsey–Hayes shall reinstate the health care benefit plans that were in effect prior to January 1, 1992 for all applicable salaried retirees who retired be-

**1182**

fore January 1, 1994 and their surviving spouses and dependents. The court's injunction shall not apply to any salaried retirees who signed special retirement agreements as set forth in the court's memorandum opinion.

**SO ORDERED.**