756 F.2d 66
 118 L.R.R.M. (BNA) 3031, 102 Lab.Cas. P 11,407,
6 Employee Benefits Ca 1391
 LOCAL UNION NO. 150-A, UNITED FOOD AND COMMERCIAL WORKERS
INTERNATIONAL UNION, AFL-CIO, CLC, and Laverne Wersinger,
Delbert Kramer, Clyde Boge, Melvin Maas, Donald Smith, Mary
Brand, Lucille Hartford, Joseph G. Grant, Lester Butler,
Janet Kenkel and Irma Schoenberger, Individually and as
Class Representatives, Appellees,
v.
DUBUQUE PACKING CO., an Iowa Corporation, Appellant.
 No. 84-1676.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 12, 1984.
Decided March 4, 1985.
 
 Raymond Kelly, Chicago, Ill., for appellant.
 Russell Woody, Chicago, Ill., for appellees.
 Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BRIGHT, Circuit Judge.
 LAY, Chief Judge.
 
 
 1
 This appeal involves a class action brought by the Union and various representatives of retired employees seeking, under Sec. 301 of the Labor-Management Relations Act, 29 U.S.C. Sec. 185 and Sec. 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. Sec. 1132, to enforce alleged contractual rights to certain health and welfare benefits. The dispute arises out of the Dubuque Packing Company closing of its plant in Dubuque, Iowa and termination of the collective bargaining agreement. Over Union protest, the Company refused to continue health and welfare benefits but agreed to submit the Union's grievance to arbitration as it affected current employees who would retire during the life of the collective bargaining agreement (which ran from September 1979 to September 1983). The Company refused to arbitrate the grievance concerning those who had previously retired on the ground that the Union did not represent retired former employees. After the arbitrator held that the current employees had a vested interest in all health and welfare benefits except life insurance, the Union brought this suit to require the Company to continue payments to all retirees, including those who retired before September 1979.
 
 
 2
 The district court found that the arbitration award was controlling as to the rights of employees who retired on or after September 1, 1979. The district court held that although the arbitrator's award was not dispositive of the rights of those who retired before September 1, 1979, under the contract the Company must continue payment of benefits to all past retirees as well. The court issued a permanent injunction requiring the Company to continue the benefits provided under the agreement to all retired employees. This appeal followed.
 
 
 3
 The Arbitrator's Award--Retirees after September 1, 1979
 
 
 4
 On April 12, 1982, during the term of the 1979 Health and Welfare Plan and collective bargaining agreement, the Company gave notice to the Union that it intended to close the plant on October 16, 1982. The Company and the Union had previously negotiated changes in their agreement and extended it to September 1, 1983. Based on the Company's statement that all retirees' health and welfare benefits would terminate when the collective bargaining agreement expired on September 1, 1983, the Union filed two grievances.
 
 
 5
 The first grievance sought to have all employees who would retire during the remaining term of the then current collective bargaining agreement receive benefits after the collective bargaining agreement and the Health and Welfare Plan had expired. The second grievance sought continued coverage for the former employees who retired before September 1, 1979.
 
 
 6
 The Company refused to arbitrate the second grievance because the Company claimed the Union could only represent bargaining unit members. The Company did agree to submit the first grievance to arbitration.
 
 
 7
 The arbitrator's award was rendered on June 20, 1983. The arbitrator held:
 
 
 8
 [I]t is the judgment of the arbitrator that the parties did specifically provide for the continuation of certain insurance benefits and the arbitrator has determined based on this clear contract language, and other evidence presented, that the Company is obligated to continue those benefits after the expiration of the labor Agreement for those employes [sic] who meet the contractual requirements prior to its expiration.
 
 
 9
 Based on that analysis and conclusion, the arbitrator declared:
 
 
 10
 A prospective retiree who dies, or who retires and dies prior to the expiration of the labor Agreement is entitled to receive the benefits provided by the Company in 3.16 of the Health and Welfare Plan for the duration specified therein, whether or not the labor Agreement continues in effect.
 
 
 11
 A prospective retiree who retires prior to the expiration of the labor Agreement is entitled to receive the benefits rovided [sic] by the Company in 5.1, 5.2, and 5.3 (including 3.16 by reference in 5.1(a)(1)) of the Health and Welfare Plan for the duration specified therein, whether or not the labor Agreement continues in effect.[1]
 
 
 12
 Although the Company did not appeal the arbitrator's award, the district court nevertheless entered an order enforcing the award. Notice of appeal of the district court's final judgment was filed by the Company.
 
 
 13
 On appeal the Company urges: "(1) the arbitrator's award relates to employee benefits subject to ERISA and therefore must be subject to de novo review rather than the extremely limited review of labor arbitration awards allowed under federal labor law; (2) on de novo review the Arbitrator's award would not be upheld * * *."
 
 
 14
 The difficulty we have with the Company's argument concerning the arbitrator's award is that there is no indication in this record these claims were raised before the district court. The Company did not file a cross-claim seeking such relief but simply relied on a general denial of the class claim. In its opinion the district court stated "neither party raises any question as to the validity of the award, rather the question appears to be its scope." The Company argued that the arbitration award dealt only with the rights of employees who would retire after the date of the award and prior to the expiration of the collective bargaining agreement. The Company based this argument on the arbitrator's statement: "This arbitration case does not deal with the rights of retirees, but it does deal with the rights of current employes [sic] who will retire during the life of the current labor Agreement."
 
 
 15
 The Union and the class urged that the arbitrator's award covered the pre-September 1979, as well as all post-September 1979, retirees. The Union repeats their argument on appeal. The arbitrator clearly limited its award to those who retired after September 1979. The district court so found.
 
 
 16
 The importance of this discussion, however, is that we find the issues now raised by the Company concerning the arbitrator's decision should be deemed waived. The Company agreed to submit the dispute to arbitration. The Company did not appeal the arbitrator's award; the action brought before the district court by the class sought relief for all retirees on the same basis that the arbitrator had awarded relief. As to the arbitration award, the only argument before the district court related to the scope of the arbitrator's decision--whether it covered the pre-June 1983 retirees as well as future retirees still covered under the existing bargaining unit. No challenge was made before the district court to the validity of the arbitrator's award and applicability to the current employees.[2] The Company's pleading did not place the validity of the arbitration award in issue. It did not appeal to the district court from the arbitrator's award.
 
 
 17
 We therefore find no viable issue preserved on appeal as to the validity of the arbitrator's award as it applies to the post-September 1979 employees.[3] The district court's order enforcing the agreement is not challenged; it is therefore ordered enforced.
 
 
 18
 The District Court Order--Retirees before September 1, 1979.
 
 
 19
 Thus, the fundamental issue on appeal is whether the district court erred in construing the applicable agreements and circumstances to provide health and welfare benefits to former employees who retired before the September 1979 agreement.
 
 
 20
 Ordinarily construction of contractual agreements constitutes a question of law; if the contract is deemed ambiguous, then the court may weigh extrinsic circumstances to aid in its construction.
 
 
 21
 In holding that the contract included all retirees, both past and future, the district court adopted the reasoning of the arbitrator and found it applicable to all retirees. In further support of its interpretation the court found: (1) there is credible evidence in the record that past employees were advised they would receive lifetime benefits; (2) in the past the Company continued benefits when no bargaining agreement was in effect; and (3) while the 1979 agreement contained no provisions extending benefits to employees who retired prior to September 1, 1979, as did prior agreements, the Company continued to provide benefits.
 
 
 22
 In Section 30.4(a) of the 1973 agreement and Section 3.4A of the 1976 agreement the hospital, medical and surgical benefits of past retirees were specifically reaffirmed. The 1979 agreement contains no such language. Section 3.4A was not incorporated in the 1979 agreement. No explanation was offered as to its absence. The course of dealings between the Union and the Company shows that each agreement was simply a modification of the prior agreement and terms were changed only as a result of negotiation. There is no evidence that the parties agreed to terminate retirees' benefits. Nothing in the 1973 and 1976 agreements states that retirees' benefits are tied to renewal of the agreement or terminate when it expires. The sections in all three agreements dealing with termination state that coverage ends when an employee is terminated or six months after the employee's death. While Section 5.1(a) and 5.2(a) of the 1979 agreement specify post-September 1979 retirees, the overall sense of Article V is that greater benefits are offered to those retirees, while past retirees continue to receive their original benefits. Section 3.8 of the 1976 agreement and Section 3.7 of the 1979 agreement imply that past benefits continue in existence. The ambiguity of the 1979 agreement forces us to look to extrinsic evidence such as the October 2, 1979 Memorandum of Agreement. The Memorandum makes specific provisions for pre-September 1979 retirees. There is no explanation why all items of the Memorandum were not included in the revision of the printed contract booklet distributed to employees. The Company has maintained the Union cannot represent retirees because they are not part of the bargaining unit. Thus, we cannot conclude the retirees' benefits were negotiated out of the agreement.
 
 
 23
 Both parties agree benefits can outlast the collective bargaining agreement under which they arose, if the parties so intended. We must examine the intent of the parties to determine whether the health and welfare benefits terminated at the expiration of each agreement. There is no language in the 1973 and 1976 agreements specifically limiting retirees' benefits. There is limiting language regarding the benefits of employees--benefits are contingent on continued employment. Even the Company, in its brief, admits there is language "which could be interpreted to promise continued welfare benefits to the eligible survivors of certain retirees for periods extending beyond the expiration of the [Health and Welfare-] Plan." The burden is on the plaintiffs to show that the parties intended retirees' benefits would be vested and not tied to the agreement which created them.
 
 
 24
 While the agreements are not unambiguous, we believe plaintiffs have carried their burden of proof. As noted previously, there are many indications in the agreements and course of dealing that the parties intended the right to benefits would vest upon retirement. The right to receive health and welfare benefits arises from the retiree's status as a past employee. It is not dependent on a continued or current relationship with the Company. The status of a retiree cannot be affected by future negotiations or agreements between the Company and the Union; neither can act on behalf of retirees. There is simply no evidence that the Company and the Union did not intend to vest the right to benefits in the retirees. There is, on the other hand, evidence that the parties implicitly intended to provide lifetime benefits to retirees.
 
 
 25
 Because the right to benefits has become vested and the retirees are not part of the collective bargaining process, the Company's claim that it may implement its final offer to the retirees of lower benefits, because it has bargained to impasse, is without merit. Furthermore, the plant has closed and there is no collective bargaining situation in this case since no agreement is contemplated. The dispute is simply one of contract interpretation.
 
 
 26
 Therefore, we affirm the judgment of the district court.
 
 
 
 [1]
 The arbitrator also held that life insurance benefits under section 2.9 of the Plan would not continue in effect after the collective bargaining agreement expired
 
 
 [2]
 If such arguments were made, the district court in upholding the arbitrator's agreement, ruled that the contract clearly applied to current employees and provided vested welfare rights for all retirees
 
 
 [3]
 The parties agreed to submit the case to arbitration and agreed that the arbitration would be binding and final as to all parties