**UNITED PAPER WORKERS INTERNATIONAL UNION, LOCAL 1020, et al., Plaintiffs,**

v.

**MUSKEGON PAPER BOX COMPANY, et al., Defendants.**

No. G87–295 CA.

United States District Court,
W.D. Michigan, S.D.

Aug. 30, 1988.

Michael Hamilton, Nashville, Tenn., Levin, Levin, Garvett and Dill by J. Douglas Korney, Southfield, Mich., for plaintiffs.

Howard & Howard by Brad Rayle, Kalamazoo, Mich., for defendants.

## OPINION

BENJAMIN F. GIBSON, District Judge.

Plaintiffs filed this action under Section 301 of the Labor Management Relations Act, 29 U.S.C. §§ 141 *et seq.*, to recover certain retiree health and life insurance benefits contained in a series of collective bargaining agreements between United Paper Workers International Union, Local 1020 ("Local 1020" or "the Union") and defendant Muskegon Paper Box Company ("Muskegon" or "the Company"). Both plaintiffs and defendants have moved the Court for summary judgment pursuant to Federal Rule of Civil Procedure 56. The parties have stipulated that there are no genuine issues of material fact and that the Court may decide this matter on the basis of the Amended Joint Stipulation of Facts submitted by the parties. In a hearing on this matter held July 26, 1988, oral argument was presented and the matter taken under advisement. Having reviewed the evidence presented, argument of counsel, and the relevant statutory and case law, this matter is now ripe for resolution.

## FINDINGS OF FACT

The Joint Stipulation of Facts, as amended, is hereby adopted by the Court and incorporated by reference as part of the Court's Findings of Fact. *See* Joint Stipulation of Facts dated December 7, 1987 (Pleading No. 21) and Amendment to Joint Stipulation of Facts dated February 25, 1988 (Pleading No. 25). In addition, the Court makes the following findings of fact, supplementing the parties' stipulation:

The specific language of Article IX, Sub-Paragraph 119(g) of the 1983–1985 Contract, as amended, does not expressly indicate the intended duration of retiree health insurance benefits.

The specific language of Article IX, Sub-Paragraph 120(b), does contain express durational language indicating that life insurance benefits shall continue as long as the former retiree maintains his or her retired status.

The specific language of Article XII, Paragraph 129, provides that the agreement between the parties shall remain in full force and effect until August 1, 1986, and from year to year thereafter, unless terminated, amended, or modified by mutual agreement of the parties thereto. While this general termination clause expresses a specific durational period for the agreement itself, the language does not express-

ly limit the duration of benefits provided therein. Nor does the contract contain any other express language specifically stating the manner of termination for benefits provided.

## CONCLUSIONS OF LAW

The issue presented is whether retiree life and health insurance benefits contained in the prior collective bargaining agreements survived the execution of the Plant Closing Agreement. In resolving the issues presented, this Court does not write upon a clean slate. The issue of whether retiree health and insurance benefits survive the expiration of a collective bargaining agreement has been comprehensively addressed by the Sixth Circuit Court of Appeals in *Int'l Union, United Automobile, Aerospace, and Agricultural Implement Workers v. Yard–Man Inc.*, 716 F.2d 1476 (6th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984). *See also Weimer v. Kurz–Kasch, Inc.*, 773 F.2d 669 (6th Cir.1985); *Policy v. Powell Pressed Steel Co.*, 770 F.2d 609 (6th Cir. 1985). Both parties agree that the principles enunciated in *Yard–Man* control the resolution of this controversy.

In *Yard–Man*, the court of appeals first identified the appropriate starting point to be utilized in examining the duration of retiree benefits:

> [W]hether retiree insurance benefits continue beyond the expiration of the collective bargaining agreement depends upon the intent of the parties. Clearly the parties to a collective bargaining agreement may provide for rights which will survive the termination of their collective bargaining relationship.... Any such surviving benefit must necessarily find its genesis in the collective bargaining agreement.

716 F.2d at 1479. The court then identified relevant steps in the analysis:

> The court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent. The intended meaning of even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion. The Court should also interpret each provision in question as part of the integrated whole. If possible, each provision should be construed consistently with the entire document and the relevant positions and purposes of the parties. As in all contracts, the collective bargaining agreement's terms must be construed so as to render none nugatory and avoid illusory promises. Where ambiguities exist, the court may look to other words and phrases in the collective bargaining agreement for guidance. Variations in language used in other durational provisions of the agreement may, for example, provide inferences of intent useful in clarifying a provision whose intended duration is ambiguous. Finally, the court should review the interpretation ultimately derived from its examination of the language, context and other indicia of intent for consistency with federal labor law.

*Yard–Man, id.* at 1479–80 (citations omitted).

To further aid the analysis, the court in *Yard–Man* emphasized two factors which, absent strong evidence to the contrary, weigh in favor of a finding that retiree benefits survive the expiration of the collective bargaining agreement. First, the court recognized that normally retiree benefits are vested. 716 F.2d at 1482 n. 8. This is so due to the precarious relationship between retirees and the union—upon expiration of a particular collective bargaining agreement, a union owes no duty to bargain for continued non-vested benefits for retirees. *Id.* at 1482. *See also Policy v. Powell*, 770 F.2d at 613. "A union may not, however, bargain away retiree benefits which have already vested in particular individuals. Such rights, once vested upon an employee's retirement, are interminable and the employer's failure to provide them is actionable under § 301 by the retiree." *Policy v. Powell, id.*, citing *Yard–Man*, 716 F.2d at 1482 n. 8, citing *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass*, 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 398 n. 20, 30 L.Ed.2d 341 (1971). The court also reasoned that retirement benefits are a form of deferred compensation. Employ-

ees work for retirement benefits during the time of their active employment, receiving lower salaries or wages in exchange for benefits after retirement. Thus, the court concluded that it is unlikely that present employees would forego higher wages unless there was some assurance the bargained-for benefits would be forthcoming upon retirement. *Yard–Man, id.* Second, the court in *Yard–Man* recognized that retiree benefits are "status benefits" which carry with them an inference that they continue so long as the prerequisite status, retirement, is maintained. *Policy v. Powell,* 770 F.2d at 613; *Yard–Man,* 716 F.2d at 1482.

With this background in mind, the Court will proceed to analyze the agreements at issue. Plaintiffs contend that the language of the collective bargaining agreements are unambiguous and that the clear import of the language utilized is that the parties intended that both the health and life insurance benefits granted to retirees would survive the agreements which created them. The defendants contend that the provisions regarding health and insurance benefits are ambiguous but, when viewed in light of the extrinsic evidence, it is clear that the parties did not intend that the retirement benefits be vested. If the rights were vested, then neither the Company nor the Union, in the absence of ratification by the retirees, could bargain those rights away.

■ With respect to life insurance benefits, Paragraph 138 of the 1968–1971 Agreement provided as follows:

> In addition, during the period of such retirement, the Company will obtain and pay for a life insurance policy in the sum of One Thousand ($1,000.00) Dollars on the life of such retiree.

The above-cited language, except for the dollar amount, was included in each subsequent agreement executed by the Company and Local 1020. The Court finds this language unambiguous. Only one limitation is placed on the continuance of retiree life insurance benefits, the benefits are to continue as long as the former employee remains "retired." The Court need not resort to the examination of extrinsic evidence to determine the status of the benefits. The Court concludes that the life insurance benefits at issue were vested and the Company's failure to provide such benefits was in breach of the collective bargaining agreement.

With respect to the health insurance benefits, the relevant contractual language is as follows:

> The Company will provide the Blue Cross Blue Shield Complimentary Option 2–1 program for supplementing Medicare benefits for retirees who are age sixty-five (65) or older and who retire on or after August 1, 1981.

There is no express language specifically limiting these benefits. While the language is not free of some ambiguity, it is clear that these benefits are "status" benefits which are not dependent on a continued or current relationship with the Company. *See Local Union No. 150–A United Food and Commercial Workers Int'l Union v. Dubuque Packing Co.,* 756 F.2d 66, 69 (8th Cir.1985). When viewed in light of the permissible inference of vesting, the Court must conclude, absent convincing evidence to the contrary, that the parties intended that the health insurance benefits were vested.

■ The defendants' reliance on the general duration or termination clause contained in the collective bargaining agreement is misplaced. In *Yard–Man,* the court held that a general duration or termination clause ending the collective bargaining agreement as of a certain date did not demonstrate an intent that all benefits described in the agreement terminate as of that date. 716 F.2d at 1482–83. In accord, the court further held in *Weimer v. Kurz–Kasch:*

> In light of the insurance provisions' conditioning the grant of retiree insurance benefits only on the retiree's remaining retired and unemployed, and in light of the parties' failure to specify that the retiree insurance benefits expired with the termination of the collective bargaining agreements, we hold that the general termination clause does not support a

finding that retiree benefits expired when the agreements expired. 773 F.2d at 676. Like the provision in *Yard–Man*, the termination clause at issue here speaks only to termination of the *agreement* and not expressly to termination of *benefits*. Thus, the Court must conclude that the general termination clause does not support an inference that the parties did not intend the retirement benefits to continue beyond the life of the agreement.

██ The Company further argues that the negotiations which resulted in forfeiture of retirement benefits by the Plant Closing Agreement demonstrate that the parties did not consider retirement benefits vested. The Court finds this argument unpersuasive. The actions of the Union and the Company subsequent to the collective bargaining agreements which created the insurance benefits are insufficient to negate the evidence that the benefits had vested. It is undisputed that the individual plaintiffs did not receive notice of the special meeting at which the Union membership ratified the agreement and it is also undisputed that none of these individuals participated in the vote approving the changes. As previously noted, a union may not bargain away retiree benefits which have already vested in particular individuals without that individual's consent. Such rights, once vested upon an employee's retirement, are interminable and the employer's failure to provide them is actionable. *Policy*, 770 F.2d at 613. Based on the evidence presented, the Court concludes that the health insurance benefits had also vested and were not subject to termination by the Union or the Company.

In conclusion, the Court finds as a matter of law that, in the absence of convincing evidence to the contrary, both the health and life insurance benefits at issue vested in the individual retirees. Thus, the Plant Closing Agreement was ineffective in terminating those rights. This conclusion is premised on interpretation of the language of the contracts in light of the legal inferences enunciated in *Yard–Man*. Even assuming the language is ambiguous, the evidence offered by the Company is insufficient to overcome the evidence which supports a finding of vested benefits and plaintiffs are entitled to judgment in their favor.