Anna HINCKLEY, Richard Benn, Billy Flannery, Ernest Ballard, United Paperworkers International Union, Local No. 7670, and United Paperworkers International Union, Plaintiffs,

v.

KELSEY–HAYES COMPANY, Defendant.

Civ. A. No. 93–74537.

United States District Court, E.D. Michigan, Southern Division.

Nov. 3, 1994.

Ernest Ballard, Previant Goldberg, Milwaukee, WI, for plaintiffs.

Richard E. Rassel, Butzel Long, Detroit, MI, Jay G. Swardenski, Matkov Salzman, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

GADOLA, District Judge.

This matter is before the court on plaintiffs' motion for a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. Plaintiffs represent a proposed class of individuals seeking relief under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, from defendant Kelsey–Hayes Company for breach of a collective bargaining agreement and a welfare benefit plan.[1] For the reasons discussed below, the court will grant plaintiffs' motion.

### I. Facts

In this proposed class action, plaintiffs are labor organizations and individuals who represent retired unionized employees, their surviving spouses, and current, retirement-eligible unionized employees of Kelsey–Hayes' Jackson, Michigan facility.[2] Plaintiffs Anna Hinckley and Richard Benn are retired employees, while plaintiffs Billy Flannery and Ernest Ballard are current employees who are eligible for retirement.[3] Plaintiffs United Paperworkers International Union and its Local 7670 negotiated successive collective bargaining agreements on behalf of the retiree plaintiffs. Kelsey–Hayes is a supplier and manufacturer of automotive parts that conducts business in several states.

Plaintiffs claim that defendant breached its promise to provide lifetime retiree health benefits at no cost. Defendant has provided health care benefits for its unionized retirees pursuant to successive collective bargaining agreements with the United Paperworkers and its predecessor unions since 1968. The current bargaining agreement is in effect from 1991 through 1995. Each of the collective bargaining agreements incorporate similar insurance agreements that provide health care coverage for retirees and surviving spouses at specific negotiated levels.

In April 1993, defendant notified plaintiffs that starting January 1, 1994, it would modify retiree and surviving spouse health care benefits so as to require the payment of premiums and deductibles. Defendant would thereafter require payment of a monthly premium, an out-of-pocket deductible of $300 per person and $600 per family, and a twenty percent co-pay until an annual out-of-pocket maximum of $2,000 for an individual and $4,000 per family is reached. On October 26, 1993, plaintiffs filed the instant complaint seeking damages and injunctive relief that prevents defendant from continuing the modifications to their health benefits.

Plaintiffs contend that the current collective bargaining agreement, as well as the agreements in force over the past decades, guarantee the payment of specified health benefits for the lifetime of covered retirees and their surviving spouses. Plaintiffs claim that Kelsey–Hayes has always promised the

---

1. In two prior cases before this court, *Golden v. Kelsey–Hayes Co.*, 845 F.Supp. 410 (E.D.Mich. 1994) and *Helwig v. Kelsey–Hayes Co.*, 857 F.Supp. 1168 (E.D.Mich.1994), certain unionized retirees and all salaried retirees of Kelsey–Hayes filed class actions alleging breach of collective bargaining agreements and welfare benefit plans based upon the changes to the medical benefits offered to retirees by Kelsey–Hayes effective January 1, 1994. In both prior cases, the court granted plaintiffs' motions for a preliminary injunction restoring full benefits during the pendency of the litigation.

2. Before filing their motion for a preliminary injunction, plaintiffs filed a motion for class certification pursuant to Rule 23(c) of the Federal Rules of Civil Procedure. The court referred this motion to a magistrate judge for consideration, and the matter is still pending in that forum.

3. The proposed class includes over five hundred retired unionized employees of Kelsey–Hayes who worked at the Jackson facility.

benefits to retirees during negotiations. In addition, plaintiffs contend that summary plan descriptions distributed to employees pursuant to ERISA promise lifetime health benefits to retirees.

Kelsey–Hayes contends that the collective bargaining agreements contain durational provisions that terminate all health care benefits for retirees upon expiration of the particular agreement. Furthermore, Kelsey–Hayes claims that the agreements contain provisions that exempt it from any obligation to pay medical benefits to Medicare-eligible retirees.

## II. Standard of Review for Preliminary Injunctions

 Plaintiffs are seeking a preliminary injunction that requires defendant to reinstate the benefits that it provided prior to implementing the modifications. The decision of whether or not to issue a preliminary injunction lies within the discretion of the district court. *CSX Transp., Inc. v. Tennessee State Bd. of Equalization,* 964 F.2d 548, 552 (6th Cir.1992). When determining whether to issue a preliminary injunction, a district court should address four factors:

1. the plaintiff's likelihood of success on the merits of the action;

2. the irreparable harm to plaintiff that could result if the court does not issue the injunction;

3. whether the interests of the public will be served; and

4. the possibility that the injunction would cause substantial harm to others.

*Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 262 (6th Cir.1987); *In re DeLorean Motor Co.,* 755 F.2d 1223 (6th Cir.1985); *Mason Cty. Medical Ass'n v. Knebel,* 563 F.2d 256 (6th Cir.1977).

## III. Analysis

### A. Likelihood of Success on the Merits

The principal issue is whether the individual plaintiffs have a vested right to receive lifetime health care benefits from defendant without cost, and whether defendant has a contractual right to modify and reduce the health care benefits provided for in collectively bargained agreements. Plaintiffs allege that defendant has reduced their health insurance benefits in violation of the LMRA and ERISA. If the health insurance benefits vest for the lifetime of the retirees, then defendant could not unilaterally modify or reduce those benefits.

 In *UAW v. Yard–Man, Inc.,* 716 F.2d 1476 (6th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984), the Sixth Circuit addressed the question of whether retiree health insurance benefits terminate at the expiration of the current collective bargaining agreement or whether they continue for the lifetime of the retiree. The court stated that resolution of this question depends on the intent of the parties to the collective bargaining agreement. *Id.* at 1479. First, a court must look to the express provisions of the agreement construing each section "consistently with the entire document and the relative positions and purposes of the parties." *Id.* at 1479–80. Where the express language of a retiree benefit plan is ambiguous as to the duration of retiree health insurance, courts should look to other provisions of the agreement. *Id.* at 1482. In determining the duration of retiree health benefits, the court noted that

> examination of the context in which these benefits arose demonstrates the likelihood that continuing insurance benefits for retirees were intended. Benefits for retirees are only permissive not mandatory subjects of collective bargaining. As such, it is unlikely that such benefits, which are typically understood as a form of delayed compensation or reward for past services, would be left to the contingencies of future negotiations.

*Id.* (citations omitted). The Sixth Circuit recognized that employees are aware when they accept retiree benefits in exchange for lower wages, that they cannot rely on their union to maintain those benefits once they have retired and left their bargaining unit. Thus, "finding an intent to create interminable rights to retiree insurance benefits in the absence of explicit language, is not, in any

discernible way, inconsistent with federal labor law." *Id.*

The most important holding of the *Yard–Man* decision is a recognition of an inference of interminable benefits absent express language to the contrary. In this context, the Sixth Circuit stated that

> retiree benefits are in a sense "status" benefits which, as such, carry with them an inference that they continue so long as the prerequisite status is maintained. Thus, when the parties contract for benefits which accrue upon achievement of retiree status, there is an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree. This is not to say that retiree insurance benefits are necessarily interminable by their nature. Nor does any federal labor policy identified to this Court presumptively favor the finding of interminable rights to retiree insurance benefits when the collective bargaining agreement is silent. Rather, as part of the context from which the collective bargaining agreement arose, the nature of such benefits simply provides another inference of intent. Standing alone, this factor would be insufficient to find an intent to create interminable benefits.

*Id.* at 1482 (citation omitted). The status inference does not shift the burden of proof to the defendant. *See Anderson v. Alpha Portland Indus.*, 836 F.2d 1512, 1517 (8th Cir.1988), *cert. denied,* 489 U.S. 1051, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989). The decision in *Yard–Man* has been consistently followed in more recent cases in the Sixth Circuit. *See, e.g., Smith v. ABS Indus., Inc.,* 890 F.2d 841 (6th Cir.1989) (retiree benefits were vested); *Policy v. Powell Pressed Steel Co.,* 770 F.2d 609 (6th Cir.1985) (duty to provide retiree health benefits did not end with expiration of collective bargaining agreement), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1202, 89 L.Ed.2d 315 (1986); *Weimer v. Kurz–Kasch, Inc.,* 773 F.2d 669 (6th Cir. 1985); *UAW v. Cadillac Malleable Iron Co.,* 728 F.2d 807 (6th Cir.1984). Thus, any determination of the duration of retiree health benefits must be made in the context of *Yard–Man* and its progeny.

In support of their claim for lifetime retiree health benefits, plaintiffs rely upon the express provisions of the collective bargaining agreements, portions of summary plan descriptions issued by defendant to its employees that explained the retiree benefits that it was providing to them, the conduct of defendant over the past two decades, and defendant's promises made during labor negotiations.

Plaintiffs claim that the express language of provisions of the collective bargaining agreements since 1968 indicates that their health benefits were intended to vest for their lifetimes. For example, plaintiffs point to section 5 of Article III of the 1991 agreement which is entitled "Continuance of Health Care Coverages Upon Retirement or Termination of Employment at Age 65 or Older." Section 5(a) states in relevant part as follows:

> The health care coverages an employee has under this Article at the time of retirement or termination of employment at age 65 or older for any reason other than discharge for cause with insufficient credited service to entitle the employee to a benefit under Article II of the Kelsey–Hayes Hourly–Rate Employees Pension Plan *shall be continued thereafter* provided that suitable arrangements for such continuation, can be made with the carrier(s).

2d Braman Aff., ex. 1(h) (emphasis added). Kelsey–Hayes does not claim that suitable arrangements cannot be made with the applicable insurance carrier. In cases of a surviving spouse, the agreement provides that the

> Company shall make suitable arrangements for a surviving

> spouse of an employee to participate in the health care (but not dental or vision) coverages referred to in Section 1 of this Article *as long as monthly survivor income benefits provided in Article II, Section 1(b) are payable.*

*Id.* (emphasis added). The agreements in effect from 1968 through 1991 contain similar provisions. Plaintiffs contend that these express provisions of the collective bargaining agreements unambiguously create a vested right for retirees and their surviving spouses

to receive continued health benefits throughout their retirement. They also point to the fact that no provision of the agreements give Kelsey–Hayes the right to terminate the benefits it provides to retirees.

Plaintiffs further rely upon provisions of the current and past agreements that directly tie retiree eligibility for health care coverage to eligibility for pension benefits. Surviving spouse eligibility is also tied to eligibility for survivor income benefits. Plaintiffs contend that since pension and survivor income benefits are provided for life, then health care benefits, which complement and are tied directly to the pension agreement in the text of the insurance agreements, were also intended to last for the lifetime of the retirees. In addition, plaintiffs point out that there are no provisions of the collective bargaining agreements that allow for modification or amendment of the retiree health care plans.

Besides relying upon express provisions of the collective bargaining agreements, plaintiffs also present portions of summary plan descriptions ("SPD") that Kelsey–Hayes distributed to its employees in the Jackson facility in order to explain the benefits that they were guaranteed. In a 1977 SPD, defendant stated with regard to retiree benefits that "[w]hen you are retired, your life insurance and all of your Health Care Coverages, except for vision, are continued without cost to you." 2d Braman aff., ex. 2(a). In addition, the SPD states that those employees who leave the company at age sixty-five without enough years of service to qualify for retirement, but enough to qualify for special status, are guaranteed that "all of your Health Care coverages, except vision care, will be continued for the rest of your life without cost to you." *Id.*

In an April 1, 1982 SPD for the Jackson facility insurance plan, defendant stated that "[w]hen you are retired from active service ... all of your Health Care coverages are continued without cost to ,you." 2d Braman aff., ex. 2(b). In addition, Kelsey–Hayes again states that even for those employees who are not eligible for retirement, but who terminate their employment at age 65, "all of your Health Care coverages will be continued

for the rest of your life without cost to you." *Id.* The SPD also contains language excepting retirees from durational provisions for various insurance benefits.

Plaintiffs also point to defendant's conduct to demonstrate that the parties to the collective bargaining agreements intended that retirees receive lifetime health benefits. In an affidavit, a union official who has worked for the past seven years on collective bargaining agreements and their negotiation, claims that Kelsey–Hayes has since 1968 provided its retirees with lifetime health benefits maintained at the level existing at the particular time of their retirement. Furthermore, the union official asserts that during negotiations, Kelsey–Hayes representatives promised that retirees would receive lifetime health benefits maintained at the level existing upon their retirement.

In response to plaintiffs' claims, Kelsey–Hayes contends that the express provisions of the collective bargaining agreements, as well as the surrounding circumstances, indicate that the parties to the agreements never intended to provide retirees with vested health care benefits. In support of its argument, Kelsey–Hayes relies upon durational clauses present in each of the collective bargaining agreements, provisions which limit the health benefits available to Medicare-eligible retirees, and the fact that plaintiffs failed to object to prior changes made to retiree benefit packages.

Kelsey–Hayes claims that durational clauses contained in each of the collective bargaining agreements allow for the termination of retiree health benefits following expiration of the collective bargaining agreement. For example, defendant cites a clause which provides that "[t]his Agreement and Program as modified and supplemented by this Agreement shall continue in effect until the termination of the collective bargaining agreement of which this is a part." Parres aff., ex. B. However, the Sixth Circuit has found that such routine durational clauses do not outweigh the implication that retiree health benefits were intended to outlast the life of a particular bargaining agreement. *Yard–Man,* 716 F.2d at 1482–83. In *Schalk v. Teledyne, Inc.,* 751 F.Supp. 1261

(W.D.Mich.1990), *aff'd*, 948 F.2d 1290 (6th Cir.1991), the court was presented with similar general durational provisions. It noted that

> the existence of a general durational clause which provide[s] that the collective bargaining agreement should remain in effect until a certain date d[oes] not demonstrate an intent that all benefits described in the agreement also terminate[ ] on that date.

*Id.* at 1265 (citing *Yard–Man*, 716 F.2d at 1482–83). Thus, even with a general durational provision, such provisions only refer to the length of the agreement and not the period of time contemplated for retiree benefits. Other courts have reached similar conclusions concerning the application of general durational clauses in collective bargaining agreements. *See, e.g., Weimer v. Kurz–Kasch, Inc.,* 773 F.2d 669, 676 (6th Cir.1985); *United Paper Workers v. Muskegon Paper Box Co.,* 704 F.Supp. 774, 777–78 (W.D.Mich. 1988) ("general termination clause does not support an inference that the parties did not intend the retirement benefits to continue beyond the life of the agreement").

The court finds that the provisions cited by defendant are merely general durational clauses that refer to the expiration of the collective bargaining agreement. Defendant cites provisions that merely incorporate supplemental agreements concerning pension plans, unemployment benefit plans, and health insurance programs into the collective bargaining agreement itself. Because such incorporated supplemental agreements would terminate on the date when the collective bargaining agreement terminated says nothing about the duration of particular benefits, especially benefits for retirees.[4] Defendant does not cite to any provision that specifically limits the duration of any particular benefit. This was also the key element that was missing from the durational clause addressed by the Sixth Circuit in *Yard–Man*. *Yard–Man,* 716 F.2d at 1482.

Besides the general durational clauses, defendant also relies upon provisions of the insurance agreements that it claims limit benefits provided to Medicare-eligible retirees. In the 1991 agreement for example, section 5 of Article I provides as follows:[5]

> Section 5. Federal Health Care Benefits (a) Not applicable to Employes or Former Employes Eligible For Such Benefits.
> The Provisions of the [Insurance] Program pertaining to health care benefits, separately or in combination, shall not be applicable to employees, former employees (including retired employees), or surviving spouses who are or may become eligible for health care benefits under any Federal Health Security Act or any other law providing such benefits for the public at large which may be amended or enacted.

Parres aff., ex. D. Section 5 further states that

> [i]f, as a result of such laws, the level of benefits provided for any group of employees, former employees, surviving spouses or their dependents is generally lower than the corresponding level of benefits under the Program, the Company may, at its option and to the extent it finds it practicable, provide a plan of benefits supplementary to the Federal benefits to the extent necessary to make total benefits as nearly comparable as practicable to the benefits provided under the Program.

*Id.* Based upon these provisions, defendant argues that the labor agreements allow it to terminate or modify, at will, the health benefits that it provides to retirees eligible for Medicare.

The court finds, however, that a more plausible, and more likely, interpretation of these provisions is that defendant is relieved of its obligation of providing health benefits when a government program gives retirees those same benefits. These provisions merely protect defendant from having to give its retirees duplicate benefits already provided by the government. They also protect Kel-

---

**4.** Given defendant's logic, because its pension plan was incorporated into the collective bargaining agreement, its obligation to provide pensions to past retirees would end with the expiration of the current agreement.

**5.** Each of the prior insurance agreements contain similar provisions.

sey–Hayes from having to provide benefits in the future should the federal government enact new legislation that guarantees health insurance for retirees or all employees. These provisions do not "clearly" and "unambiguously" give defendant the right to terminate all health benefits to any retiree who happens to be Medicare-eligible.[6] Rather, the burden placed upon defendant is merely lessened where its retiree receives federal benefits. As a result, the provisions cited by defendant do not establish that plaintiffs' retiree health benefits are terminable at will for all Medicare-eligible retirees.

■ Defendant's final argument is that minor benefit changes made in 1985 and 1988, to which plaintiffs did not object, somehow block them from bringing suit to reverse the substantial changes that were implemented on January 1, 1994. The court finds, however, that merely because plaintiffs chose not to bring suit on earlier changes does not mean that they have tacitly admitted that their benefits are limited and terminable. Instead, it merely indicates that the substance of the more recent changes have prompted them to seek relief. *Helwig v. Kelsey–Hayes Co.*, 857 F.Supp. 1168, 1174 n. 2 (E.D.Mich.1994) (minor benefit changes do not bar later suit on major changes); *see also Schalk v. Teledyne, Inc.*, 751 F.Supp. 1261, 1266–67 (W.D.Mich.1990) (same), *aff'd*, 948 F.2d 1290 (6th Cir.1991).

■ The court finds that plaintiffs have demonstrated a strong likelihood of success on the merits of their claim for lifetime retiree health care benefits. There are no express provisions of the collective bargaining agreements that limit the duration of retiree health benefits or that allow Kelsey–Hayes to modify or terminate those benefits at will.

Instead, plaintiffs have cited specific provisions that indicate that retiree health benefits will be continued throughout their retirement years, beyond the expiration of any particular collective bargaining agreement. For example, section 5 of Article III of the 1991 agreement states that once an employee has retired or terminated employment at age sixty-five, his health benefits "shall be continued thereafter." Surviving spouses are assured that they will receive health benefits "as long as monthly survivor income benefits" are payable. In other retiree-benefits cases, courts have found that similar provisions provide lifetime benefits for retirees. *See Smith v. ABS Indus., Inc.*, 890 F.2d 841, 846 (6th Cir.1989) (court reversed district court and found vested benefits where CBA provision stated that "[b]enefits will continue for retirees;" provision supported by summary booklets); *United Papers Workers v. Muskegon Paper Box Co.*, 704 F.Supp. 774, 777 (W.D.Mich.1988) (vested health benefits found where *Yard–Man* status inference was combined with CBA language stating that the company would provide health insurance to retirees who are age sixty-five or older); *see also Weimer v. Kurz–Kasch, Inc.*, 773 F.2d 669, 674–75 (6th Cir.1985) (court reversed district court's finding of no vested retiree benefits); *Policy v. Powell Pressed Steel Co.*, 770 F.2d 609 (6th Cir.1985) (district court reversed and retiree benefits found to be vested; however, CBA language more expansive than present in this case), *cert. denied*, 475 U.S. 1017, 106 S.Ct. 1202, 89 L.Ed.2d 315 (1986). Besides the above cited provisions, each of the collective bargaining agreements provides that eligibility for retiree health benefits is tied to eligibility for lifetime pension benefits or survivor spouse income.[7]

---

**6.** The insurance agreements presented in *Golden v. Kelsey–Hayes Co.*, 845 F.Supp. 410 (E.D.Mich. 1994) for several different bargaining units contained provisions regarding federal health benefits that are identical to those cited by defendants in this case. In *Golden*, however, when the retiree-plaintiffs sought a preliminary injunction against the same changes in benefits, defendant never raised these "clear" and "unequivocal" federal health benefit provisions as a bar to vested health insurance for its retirees. The court is confident that defendant's failure to use these "key" provisions in *Golden* stemmed not from

oversight, but rather a recognition that the provisions do not give defendant the right to terminate or modify, at will, retiree benefits for Medicare-eligible retirees.

**7.** Defendant cites language from *Musto v. American General Corp.*, 861 F.2d 897, 908 (6th Cir. 1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989) that asserts that the mere fact of eligibility for pension benefits does not automatically make a retiree health insurance a "vested" benefit. The contention cited by defendant is clearly correct, however, in

At the very least, the agreement provisions cited by plaintiffs raise an ambiguity, if not an express intent, in the agreements in favor of vested retiree health benefits. If these provisions do not expressly provide for vested benefits, then the court can apply the status inference supplied by *Yard–Man* in order to resolve the ambiguity present in the agreements. Under *Yard–Man*, there is an inference that the retiree benefits provided to plaintiffs are intended to vest for life. *Yard–Man*, 716 F.2d at 1482. The Sixth Circuit "recognized that normally retiree benefits are vested." *Policy*, 770 F.2d at 613 (citing *Yard–Man*). Under these circumstances, plaintiffs have demonstrated a substantial likelihood of success on the merits of their claims.

■ The court also finds that its conclusion that the retiree benefits at issue are vested is bolstered by the evidence provided by the summary plan descriptions. The summary plan descriptions explicitly indicate that retiree benefits were intended to last throughout their retirement, without cost, regardless of the termination of the collective bargaining agreement. Although the evidence from the SPDs supports the court's interpretation of the collective bargaining agreements, this evidence is also especially compelling because the Sixth Circuit has decided that "statements in a summary plan are binding and if the statements conflict with those in the plan itself, the summary shall govern." *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir. 1988); *see also Rhoton v. Central States, S.E. & S.W. Areas Pension Fund*, 717 F.2d 988, 989 (6th Cir.1983). *But cf. Musto v. American Gen. Corp.*, 861 F.2d 897, 907 (6th Cir. 1988) (court declines to address effect of written representations outside of the primary plan documents), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). Thus, even if defendant is correct in its interpretation of the collective bargaining agreements and in its contention that the promises

in the SPDs are contrary to the provisions of the agreements, defendant is bound by the promises in the SPDs.

The basis for this holding is that ERISA's requirement of summary plan descriptions was intended to provide employees with a document explaining their benefits in terms comprehensible to the average participant. As the Sixth Circuit has noted, "[g]iven the [summary plan description's] important role under the ERISA framework, it is natural for courts to hold the [summary plan description] controlling when it conflicts with the plan itself." *Flacche v. Sun Life Assur. Co.*, 958 F.2d 730, 736 (6th Cir.1992) (court held that terms of an SPD would be controlling, but that terms of a benefits certificate were non-binding). Without this result, unscrupulous employers could issue summary plans containing misleading information, but then avoid liability by referencing the technical master insurance agreement. Furthermore, by giving binding effect to plan summaries, employers have an added incentive to give accurate information to their employees. Several other circuits have come to similar conclusions. *See, e.g., Aiken v. Policy Management Sys. Corp.*, 13 F.3d 138 (4th Cir. 1993); *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907 (2d Cir.1990); *McKnight v. Southern Life and Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir.1985); *Govoni v. Bricklayers, Masons & Plasterers Int'l Union*, 732 F.2d 250, 252 (1st Cir.1984). Thus, even if the provisions of the collective bargaining agreements gave defendant the right to terminate retiree health benefits, this court will give controlling weight to the representations made to plaintiffs in the summary plan descriptions.[8]

Besides the provisions in the agreements, the language of the SPDs, and the status inference supplied by *Yard–Man*, defendant's own course of conduct indicates that any ambiguity in the collective bargaining agreements should be resolved in favor of the retirees and their claim of lifetime health benefits. The evidence shows that since 1968

this case, as in *Golden v. Kelsey–Hayes Co.*, 845 F.Supp. 410, 413 (E.D.Mich.1994), the text of the insurance agreement provisions directly support the inference that retiree health benefits are vested.

8. The court also notes that regardless of the binding nature of SPDs, in this case, they provide strong extrinsic evidence to support plaintiffs' reading of the collective bargaining agreements.

defendant has provided its retirees and their surviving spouses with health benefits maintained at the level existing in the collective bargaining agreement upon their retirement. Plaintiffs have also presented affidavits which indicate that Kelsey–Hayes executives represented that the health benefits that it provides to its retirees are vested for life at the level existing upon their retirement. In addition, the court is not convinced that plaintiffs' failure to challenge the minor health benefit changes made in the mid-eighties is indicative of a presumed right upon the part of defendant to modify and terminate retiree benefits at will.

In conclusion, the court finds that plaintiffs have demonstrated a substantial likelihood of success on the merits of their claims under LMRA and ERISA. Provisions of the collective bargaining agreements, promises made in SPDs, defendant's own conduct over the past twenty-five years, and the very nature of retiree benefits as deferred compensation all support the conclusion that plaintiffs have a vested right to receive retiree health insurance.

### B. Irreparable Harm to Plaintiffs

■ If a preliminary injunction is not entered, plaintiffs allege that they will suffer irreparable harm because they will be forced to choose between paying for needed medical procedures and paying for basic necessities. Plaintiffs are retirees or surviving spouses of retirees who allegedly do not have the financial resources to begin paying premiums and deductibles on their health care. Plaintiffs contend that they may be forced to forego needed medical care because they would have to absorb part of the cost of the care under defendant's modified benefits plan. In support of their allegations, plaintiffs have submitted numerous affidavits from individual retirees detailing the impact of the modifications of the benefits plan to their finances.

■ Defendant claims that plaintiffs have not established that they will suffer irreparable injury if health benefits are not restored to the level provided prior to January 1, 1994. Defendant cites the fact that plaintiffs have only presented an affidavit from one of the two named retirees who represent the proposed class of retirees concerning the injury that they would suffer. In addition, defendant claims that plaintiffs have failed to show that money damages would not fully compensate them.[9]

The court finds, however, that those plaintiffs who are retired employees have established that they would suffer irreparable injury absent injunctive relief.[10] Numerous courts have found that reductions in retiree insurance coverage constitute irreparable harm, meriting a preliminary injunction. *United Steelworkers of America v. Textron, Inc.*, 836 F.2d 6 (1st Cir.1987) (retirees as a group have less resources and are more vulnerable to emotional distress due to the imposition of additional insurance costs); *Golden v. Kelsey–Hayes Co.*, 845 F.Supp. 410 (E.D.Mich.1994); *Schalk v. Teledyne, Inc.*, 751 F.Supp. 1261 (W.D.Mich.1990) (because retirees live on fixed incomes, small increases in expenses create extreme financial hardship; they are more likely to suffer uncertainty and worry over the new costs associated with the modified plan), *aff'd*, 948 F.2d 1290 (6th Cir.1991); *Mamula v. Satralloy, Inc.*, 578 F.Supp. 563 (S.D.Ohio 1983).

■ The court finds that the evidence presented by plaintiffs demonstrates that similar harm would befall retired employees from Kelsey–Hayes' Jackson, Michigan facility were the modifications to plaintiffs' health benefits continued. In addition, the court will take into consideration the irreparable harm faced by putative class members before

---

9. Defendant also cites plaintiffs' failure to file their motion for preliminary injunction at an earlier date as evidence of the lack of irreparable injury. However, plaintiffs' motion was filed contemporaneously with their motion for class certification. In prior retiree class action litigation involving Kelsey–Hayes, the company has based part of its opposition to a preliminary injunction on the fact that certification had not been sought. In addition, plaintiffs contend that

the irreparable nature of the injuries they face has only become apparent since the benefit changes have been in effect for the past ten months.

10. Those plaintiffs who are retirement-eligible current employees who retire while the current collective bargaining agreement is still in effect could make the same claim.

class certification because of the nature of injunctive relief at this stage of the litigation. *Lapeer County Medical Care Facility v. Michigan,* 765 F.Supp. 1291, 1301 (W.D.Mich.1991) (prior to certification, court treated case as class action); *Musto v. American General Corp.,* 615 F.Supp. 1483, 1492 (W.D.Tenn.1985) (preliminary injunction may issue prior to certification), *rev'd on other grounds,* 861 F.2d 897 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). Given the circumstances presented in this case, the court finds that those plaintiffs who are retired employees have established that they will suffer irreparable harm if this court does not order defendant to reinstate their health insurance benefits.

### C. Harm to Others

■ If a preliminary injunction is entered restraining defendant from modifying its retiree health care benefits, defendant will be forced to provide health insurance equal to the level existing prior to January 1, 1994 for its retirees. Thus, if a preliminary injunction is entered, defendant will suffer a financial loss during the pendency of this litigation, a portion of which it may recoup if it is ultimately successful on the merits. Defendant claims that it will cost an additional $87,000 per month, over the cost of the modified plan, to maintain full benefits for retiree plaintiffs. However, defendant has made no showing that requiring it to reinstate the old retiree benefit plan would cause it severe financial hardship. In fact, Kelsey–Hayes has paid the full cost of health benefits for its retirees for many years prior to the recent changes, and it appears that a continuation of that situation would not cause economic dislocation.

The court finds that the harm to defendant of reinstating its former retiree health benefits would not outweigh the harm suffered by plaintiffs. Several other courts have found similarly that the harm caused an employer that is required to maintain health benefits

because of a preliminary injunction is outweighed by the harm caused to retirees forced to go without medical care or forced to choose between basic necessities in order to pay premiums and deductibles. *Schalk,* 751 F.Supp. at 1268; *Shultz v. Teledyne, Inc.,* 657 F.Supp. 289, 293 (W.D.Pa.1987). Defendant has demonstrated no special circumstances in this case that would indicate that the cost of maintaining full benefits for a number of its retirees would force it into bankruptcy or similar economic distress. The court finds that the harm caused defendant by an injunction requiring it to reinstate all health benefits previously provided to its retirees from the Jackson facility until this litigation is resolved does not outweigh the harm caused to plaintiffs.

### D. The Public Interest

Plaintiffs allege that the public interest favors a preliminary injunction. Plaintiffs claim that ERISA and the LMRA strongly favor the protection of the rights of employees guaranteed by welfare benefit plans that are part of collective bargaining agreements. ERISA provides that the policy behind it is to "protect the interests of participants in employee benefit plans ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, ... by providing for appropriate remedies, sanctions, and ready access to the Federal Court." 29 U.S.C. § 1001(b). In addition, the LMRA favors enforcement of collective bargaining agreements so as to protect the contractual rights of employees and employers. In *Schalk,* the court indicated that the "public interest lies in protecting the legitimate expectations of retirees that their health insurance will be provided for the rest of their lives." *Schalk,* 751 F.Supp. at 1268.

Defendant claims that the public interest lies in allowing companies to distribute the burden of greater health care costs to the beneficiaries of the coverage. Without such burden shifting, companies that create jobs and enrich communities would be hurt.[11]

---

11. During oral argument, plaintiffs' counsel sought to characterize this litigation as an attempt by a greedy, "large corporation" to "steal" monies from poor, defenseless, and elderly "cancer patients" and other unfortunates. A more

plausible portrait of this litigation, however, is as merely a contractual dispute between an employer and its employees following internal cost-cutting. It appears that plaintiffs' counsel needs to be reminded of the vast contributions made to

**1046**

In the circumstances of this case, however, the court finds that the public interest favors issuance of a preliminary injunction.

### E. Security Bond

■ Pursuant to Rule 65(c), no "preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered" by defendant. Fed. R.Civ.P. 65(c). A district court must expressly consider the question of requiring a bond before issuing a preliminary injunction. *Roth v. Bank of the Commonwealth,* 583 F.2d 527 (6th Cir.1978). The amount of security required and whether a bond is needed is up to the discretion of the district court.

■ Defendant estimates that if it is required to reinstate its old health benefits, it will cost the company approximately $87,000 a month. As a result, defendant has requested a bond of $1,044,000. In *Schalk,* based on defendant's claim that it would cost an additional $90,000 per month to maintain its old health plan, the district court required plaintiffs to post a $50,000 bond to support a preliminary injunction containing similar modifications of a retiree health plan. *Schalk,* 751 F.Supp. at 1269. In *Golden v. Kelsey–Hayes Co.,* 845 F.Supp. 410 (E.D.Mich.1994), a similar action brought by unionized retirees of defendant, the court required a bond of $100,000 based on defendant's representation that the injunction would cost the company approximately $160,000 per month. *See also Helwig v. Kelsey–Hayes Co.,* 857 F.Supp. 1168 (E.D.Mich.1994) (based upon costs of $150,000 per month, court required a $95,000 bond). Plaintiffs contend that no bond should be required in this matter, or that they should only have to post a nominal amount.

Under the circumstances of this case, the court finds that a bond of $1,044,000 would be excessive. However, given the burden placed on defendant and following this court's similar rulings in *Golden* and *Helwig,* the court will require plaintiffs to post a bond

of $55,000 before it will issue a preliminary injunction. A decision requiring no bond or only a nominal bond would be inappropriate in such a matter as this where defendant has strongly denied liability, there exist multiple and conflicting documents and affidavits, and given the burdens placed upon Kelsey–Hayes.

### IV. Conclusion

The court will grant plaintiffs' motion for a preliminary injunction ordering defendant to reinstate the health benefits to retirees and surviving spouses as provided for under the terms of the collective bargaining agreements in force at the time of their retirement from the Jackson facility. Plaintiffs have demonstrated that they will likely prevail on the merits and that they will suffer irreparable harm absent an injunction. In addition, the harm suffered by defendant as a result of an injunction would be outweighed by the harm suffered by plaintiffs without such relief.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that plaintiffs' motion for a preliminary injunction is **GRANTED.**

**IT IS FURTHER ORDERED** that upon the posting of a $55,000 security bond by plaintiffs, defendant Kelsey–Hayes shall reinstate the health care benefit plans that were in effect prior to January 1, 1994 for retirees, surviving spouses, and other similarly eligible persons as provided for under the applicable collective bargaining agreements for the Jackson, Michigan facility. This order includes those current employees who retire before the expiration of the current collective bargaining agreement. This order shall remain in effect until further order of this court.

**SO ORDERED.**

---

American society by so-called "large corporations." In this context, an attempt to cut costs in an increasingly competitive marketplace is not necessarily a greedy scam by corporate types that is always contrary to the public interest.